**John C. KELLIHER, Plaintiff,**

**v.**

**Daniel R. GLICKMAN, Defendant.**

**No. CIV.A. 99–M–1235–N.**

United States District Court,
M.D. Alabama,
Northern Division.

March 8, 2001.

---

6. *See* Def.Ex. A.

Alvin T. Prestwood and Carl R. Salle of Volz Prestwood & Hanan P.C., Montgomery, AL, for Plaintiff.

Leura J. Garrett of the United States Attorney's Office, Montgomery, AL, for Defendant.

### ORDER

MCPHERSON, United States Magistrate Judge.

On 13 October 1999, the plaintiff, John C. Kelliher ["Kelliher"], filed this action against Daniel R. Glickman ["Glickman"], Secretary for the United States Department of Agriculture (Doc. # 1, Compl). Jurisdiction is invoked pursuant to 28 U.S.C. § 3341 and 1443. (Doc. # 1, ¶ 2).

This case is now before the court on the motion for summary judgment filed by the defendant on 18 January 2000 (Doc. # 19). For the reasons that follow, the court finds that the Motion for Summary Judgment should be GRANTED in part and DENIED in part.

### I. FACTS [1] AND PROCEDURAL HISTORY

This action arises out of the termination of employment of plaintiff Kelliher, a Cau-

---

1. This recitation of "facts" is based upon materials presented by the parties, viewed in the light most favorable to the plaintiff.

casian male over the age of 40, on 2 April 1997 from the United States Department of Agriculture ["USDA"]. In May 1992, Kelliher was employed by the Food Safety Inspection Service ["FSIS"] of the USDA as a Supervisory Veterinary Medical Officer ["SVMO"] at the Union Springs Poultry Plant (Doc. # 26, exh. 1 ["Kelliher Aff."], ¶ 3). He also held the position of Inspector in Charge ["IIC"] at the Union Springs plant (Kelliher Aff., ¶ 3)[2]. He was employed by the USDA in those positions until his termination in 1997 (Doc. # 20, p. 2).

Kelliher's duties as a plant SVMO included direct supervision of the USDA employees on his shift, conducting laboratory tests, assuring that USDA rules and policies were followed by USDA personnel and plant management, making veterinary dispositions on questions of pathology, and ensuring that plant personnel maintained plant cleanliness (Kelliher Aff., ¶ 3). All SVMO's were responsible for representing management in labor relations matters between the union and management for those issues specific to their shifts (Id.). In the event the union filed a grievance based upon the practices of an SVMO, the SVMO was required to respond to the grievance within a specified period (Id.). Finally, it was the responsibility of each SVMO to ensure that the day-to-day operations of the plant, on his shift, complied with USDA rules and regulations (Id.).

The USDA plant employees supervised by the SVMO include food inspectors whose jobs are to inspect the poultry visually as it is being processed (Doc. # 20, p. 3). To ensure that the plant processes are meeting the finished product standards, the food inspectors make anti-mortem and post-mortem inspections of the chickens that are slaughtered and processed at the plants (Id.), and they inspect problems visible on the carcasses or internal organs of birds. The problems they may discern include feed and feces contamination, gall stains, diseases, infections of the reproductive tract and septicaemia, toxic livers, sores, scabs, infections, tumors, skin cancers, and skin leukosis (Id.).

On 27 May 1994, Kelliher made a telephonic hotline report to the USDA Office of Inspector General ["IG"] about time and attendance fraud previously reported to Dr. Donald Moore ["Moore"], Circuit Supervisor for the Montgomery Circuit, and Dr. Thomas Barlow ["Barlow"], the Tallahassee Area supervisor (Kelliher Aff., ¶ 9). When the IG failed to respond, Kelliher contacted the IG office. He was told that there was no record of his complaint and advised to resubmit his complaint by facsimile; he did so on 24 August 1994 (Id.). When Barlow received Kelliher's complaint, he sent it to Moore for investigation (Id.). Moore conducted his investigation on 11 October 1994 (Id.).

On 23 February 1995, Kelliher met with Jim Borda ["Borda"], FSIS Administrative Officer assigned to the Philadelphia office (Kellher Aff., ¶ 11). Borda had been assigned to re-investigate Kelliher's first whistle-blower hotline complaint (Id.). In addition to providing Borda with statements and evidence of time fraud, attendance fraud, and mismanagement, Kelliher complained to Borda about on-going retaliation against whistle-blowers (Id.). On the following day, Kelliher's performance appraisal for the 1994 rating period was com-

---

**2.** The plaintiff asserts that by virtue of working the day shift, the title of IIC is given to the day shift SVMO as a collateral duty (Kelliher Aff., ¶ 3). He further states that the IIC is a "point of contact" only and that the title does not carry with it any authority for the day shift SVMO to supervise or direct second shift USDA employees (Id.).

pleted (*Id.*). Although he was rated "fully satisfactory", his rating was reduced in three areas where he had historically been rated "exceeds fully successful" (*Id.*). Barlow signed the rating, and in March 1995, Moore gave Kelliher the rating report (*Id.*).

On 16 June 1995, Kelliher made a telephonic "whistle-blower" complaint to Agent Craig Shubert ["Shubert"], Agent in charge, USDA Office of the IG. His complaint alleged Barlow's solicitation of consulting contracts with the poultry industry, to become effective following his impending retirement from FSIS (*Id.* at ¶ 10). Kelliher was subsequently interviewed in the Wayne Farms Plant by the IG regarding the complaint (*Id.*). The IG report did not conclude that Barlow had committed ethics violations, and the investigation was closed based upon Barlow's retirement from FSIS on 30 June 1995 (*Id.*).

On 16 October 1995, Kelliher made his third whistle-blower complaint to the USDA IG. This time, he alleged retaliation by Moore for his previous whistle-blower reports (Kelliher Aff., ¶ 12). This complaint was made in writing to Agent Edith Elzey and was investigated by Dr. Milton Lewis Benson, Area Supervisor (*Id.*).

On 19 August 1996, Kelliher made his last whistle-blower report (Kelliher Aff., ¶ 14) and again alleged time and attendance fraud by three second shift inspectors. The third report was investigated by Moore (*Id.*).

On 16 October 1996, Moore placed Kelliher on a Performance Improvement Plan ["PIP"], which Kelliher received by mail on 21 October 1996 (Kelliher Aff., ¶ 15). Kelliher contends that the PIP appeared to be a predicate action in anticipation of his termination (Kelliher Aff., ¶ 31). On 19 October 1996, Moore completed his investigation of Kelliher's August 1996 whistle-blower complaint (*Id.*).

On 12 November 1996, Moore hand-delivered to Kelliher a second PIP, dated 6 November 1996 (Kelliher Aff., ¶ 32). In addition to delivering the PIP to Kelliher, Moore conducted an inspection of the plant (*Id.*). Moore documented the results of the inspection in a memorandum dated 12 November 1996, including significant deficiencies which he pointed out to Kelliher (*Id.*).

On 21 November 1996, Kelliher was relieved of his duties at the Wayne Farms Poultry Plant by Moore (Kelliher Aff., ¶ 29). Moore told Kelliher to return home and await further instructions from the Area Office (*Id.*). From 25 November 1996, until 2 April 1997, Kelliher was detailed to various locations (*Id.*).

On 27 December 1996, Kelliher made a telephone complaint to the Equal Employment Opportunity ["EEO"] and spoke with Raphael Barrios, USDA, Civil Rights Enforcement Officer (Kelliher Aff., ¶ 17). On 2 April 1997, Kelliher was terminated by the USDA (Kelliher Aff., ¶ 29, ¶ 34). Kelliher contends that his "termination was the final and most severe act of retaliation, race discrimination and age discrimination that the defendant could engage in" (Kelliher Aff., ¶ 35).

In contrast, the defendant asserts that "Kelliher's performance failures and insubordination were so egregious that the only proper supervisory action to take was to terminate him" (Doc. # 20, p. 24). The defendant further asserts that Kelliher's termination was based upon his failure to follow instructions, numerous incidents of misconduct and breach of USDA sanitation standards, failure to answer union grievances in a timely fashion, and serious problems with his work performance. (Doc. # 20, p. 10–21).

Kelliher appealed to the Merit Systems Protection Board ["MSPB"] pursuant to the Civil Service Reform Act of 1978, 5

U.S.C. § 7701, *et seq.*[3] (Kelliher Aff., ¶ 37). In its decision dated 8 March 1999, the MSPB affirmed the USDA and found that Kelliher failed to establish (1) that the USDA discriminated against him on the basis of whistle-blower activity, (2) that the USDA discriminated against him on the basis of race or age, (3) that the USDA retaliated against him for the exercise of his right to free speech, or (4) that the USDA retaliated against him for filing an EEO Complaint. The MSPB also found that the USDA established that the penalty of removal is reasonable (Doc. # 19, MSPB Order).

Pursuant to 5 U.S.C. § 7703[4], Kelliher

---

3. § 7701(a) presents: Appellate procedures
    (a) An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation. An appellant shall have the right—
    (1) to a hearing for which a transcript will be kept; and
    (2) to be represented by an attorney or other representative.
    Appeals shall be processed in accordance with regulations prescribed by the Board.
4. § 7703 provides: Judicial review of decisions of the Merit Systems Protection Board
    (a)(1) Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision. (2) The Board shall be the named respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision issued by the Board under section 7701. In review of a final order or decision issued under section 7701, the agency responsible for taking the action appealed to the Board shall be the named respondent.
    (b)(1) Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals as provided in chapters 91 and 158, respectively, of title 28. Notwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board.
    (2) Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C.2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702.(c) In any case filed in the United States Court of Claims or a United States court of appeals, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
    (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence;
    except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.
    (d) The Director of the Office of Personnel Management may obtain review of any final order or decision of the Board by filing a petition for judicial review in the United States Court of Appeals for the District of Columbia if the Director determines, in his discretion, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive. If the Director did not intervene in a matter before the Board, the Director may not petition for review of a Board decision under this section unless the Director first petitions the Board for a reconsideration of its decision, and such petition is denied. In addition to the named respondent, the Board and all

seeks judicial review of both discrimination and non-discrimination issues addressed in the MSPB decision. Kelliher contends that the adverse action taken against him, and which was the basis of prior proceedings before the [MSPB], was motivated by a desire on the part of the USDA to punish [him] for his whistle-blowing activity, and for his having accessed EEO facilities to lodge some of his complaints (Doc. # 18, Second Amended Compl., ¶ 6).

On 13 October 1999, Kelliher asserted five claims in this action: (1) the "defendant has discriminated against him because of his race (Caucasian);" (2) "the defendant has discriminated against him because of his age (over 40);" (3) the "defendant has retaliated against him because of his whistle-blowing activity protected by 5 U.S.C. § 2302;" (4) the defendant denied him "procedural due process by allowing the same person or persons to be investigators, prosecutors and decision-makers in the [d]efendant's administrative actions against [him], and by failing to disclose the dual roles of such investigators, prosecutors and decision-makers;" and (5) the defendant "retaliated against [him] because he filed EEO complaints of discrimination based on race, disability, age, and reprisal with the Office of Civil Rights, USDA, which activities are protected by Title 42 U.S.C.S. § 2000e–3 and Title 29 U.S.C.S. § 623(d)" (Doc. # 18, ¶ 10, ¶ 12, ¶ 14, ¶ 16, ¶ 18).

Jurisdiction is invoked pursuant to 28 U.S.C. §§ 3341 and 1443 (Doc. # 18, ¶ 2). In his motion for summary judgment, filed on 18 January 2000 (Doc. # 19), the defendant asserts that the plaintiff has failed to state a prima facie case of race discrimination, age discrimination or retaliation (Doc. # 20, p. 33). The defendant also asserts that only plaintiff's claims of race discrimination, age discrimination, and retaliation are subject to de novo review in federal district court, and that plaintiff's remaining claims are to be reviewed on the record from the MSPB (Doc. # 20, p. 44). Kelliher filed his response on 8 January 2001 (Doc. # 26).

## II. STANDARD OF REVIEW

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". *Fed.R.Civ.P. 56(c)*. On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.[5] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party, i.e., the nonmoving party still bears the burden of coming forth with

---

other parties to the proceedings before the Board shall have the right to appear in the proceeding before the Court of Appeals. The granting of the petition for judicial review shall be at the discretion of the Court of Appeals. Added Pub.L. 95–454, Title II, §§ 205, Oct. 13, 1978, 92 Stat. 1143.

5. The Supreme Court explained that:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon mo-

tion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

sufficient evidence on each element that must be proved.[6] *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

## III. DISCUSSION

### A. Age Discrimination and Title VII Discrimination Claims

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e–2(a)(1).

The Age Discrimination in Employment Act ["ADEA"] forbids age discrimination in the employment of persons at least forty years of age but less than seventy years of age. 29 U.S.C. § 621 *et seq.* The Court of Appeals has adapted to issues of age discrimination the principles of law applicable to cases arising under very similar provisions of Title VII. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989). Be-

cause the same requirements of proof and the same analytical framework are used in these cases, the court will explicitly address the Title VII claims with the understanding that the analysis applies to the ADEA claims as well. *Id.*

To prevail on a Title VII claim, a plaintiff-employee must show that the employer intentionally discriminated against him in making the employment decision(s) which gave rise to the suit. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994) (citing *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1570 (11th Cir.1993)).[7] In this case, Kelliher argues that he has produced sufficient circumstantial evidence for his claims to survive summary judgment (Doc. # 26). Thus, the familiar *McDonnell Douglas* burden-shifting analysis applies. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under the *McDonnell Douglas* framework, a plaintiff must first raise an inference of discrimination by establishing a prima facie case of discriminatory discharge or retaliation. For discriminatory discharge cases, this requires proof that: (1) Plaintiff is a member of a protected

---

6. "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, ... [the court must] grant summary judgment [for the defendant]." *Earley*, 907 F.2d at 1080 (citations omitted). In *Earley*, the Court of Appeals further emphasized:

    "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

    \* \* \* \* \* \*

    If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted) (emphasis added): *accord Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir.1988).

*Earley*, 907 F.2d at 1080–81.

7. In cases brought under the Age Discrimination in Employment Act ["ADEA"], the plaintiff bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate his employment. *See Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221, 1224 (11th Cir.1982).

class; (2) Plaintiff was qualified for the job from which he was discharged; (3) Plaintiff was discharged in fact; and (4) Plaintiff's former position was filled by someone outside his protected class, or a similarly situated employee was treated more favorably. *See Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir.1997); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995); *Moore v. State*, 989 F.Supp. 1412, 1417–19 (M.D.Ala.1997). For retaliation claims, this means offering proof that: (1) plaintiff engaged in a statutorily protected activity; (2) plaintiff suffered adverse employment action; and (3) some causal connection exists between the two events. *See Morgan v. Alabama*, 5 F.Supp.2d 1285, 1297 (M.D.Ala.1998).

### 1. Plaintiff's Prima Facie Case of Discriminatory Discharge

■ The defendant is entitled to summary judgment *unless* the plaintiff can first raise an inference of discrimination by establishing a prima facie case. Here, the first elements are not seriously disputed; the court finds that Kelliher is a Caucasian male, who was 50 years of age when he was terminated by the USDA and qualified for the position from which he was terminated. Defendant's motion is premised upon his contention that Kelliher fails to meet his burden of proving that he was replaced by someone outside of his protected class and, in the alternative, that he was similarly situated to an employee who received favorable treatment (Doc. # 20, p. 36, 38). The court finds that the defendant's contentions are meritorious.

Kelliher contends that he was replaced by Dr. Gurmeet S. Guraya, also known within the FSIS as Dr. Singh ["Singh"], a younger[8] Pakistani veterinarian and SVMO in New Brockton, Alabama (Kelliher Aff., ¶ 35). According to the defen-

dant, Singh did not replace the plaintiff; instead, Singh simply made a lateral transfer to the Union Springs plant eight months after the plaintiff's effective date of termination (Doc. # 20, p. 40). In support of its position, the defendant presents the declaration of Mariano Loret DeMola ["DeMola"], District Manager of the Jackson District Office of the FSIS (Doc. # 19, exh. 6). DeMola's responsibility includes managing field operations for the FSIS for the states of Mississippi and Alabama, and the staffing for all plants (DeMola Decl., ¶ 3). DeMola stated that Singh was already a SVMO/IIC at the plant in New Brockton, Alabama, when he requested the transfer to the plant in Union Springs (DeMola Decl., ¶ 7). He further stated that the positions of SVMO/IIC of the Union Springs and New Brockton poultry processing plants were comparable in every material way (DeMola Decl., ¶ 6). Therefore, when Singh was reassigned to the Union Springs plant on 23 November 1997, he did not fill the vacancy created by the plaintiff (DeMola Decl., ¶ 9). Instead, that vacancy was merely transferred to the New Brockton plant (*Id.*). Dr. John H. Grabau ["Grabau"], a Caucasian, was hired to fill that vacancy (DeMola Decl., ¶ 9).[9]

The court finds that Kelliher has not set forth sufficient facts to survive summary judgment on the issue of his replacement by someone outside of his protected class. Here, Kelliher has not articulated specific facts from which one could infer that Singh actually replaced him. Instead, he has presented unsubstantiated assertions which, alone, are not enough to withstand a motion for summary judgment. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Accordingly, the court finds that Kelliher has not established this material prong of the

---

**8.** Singh's age is not in the evidence before the court.

**9.** Grabau's age is not in the evidence before the court.

necessary proof as part of his prima facie case.

■ As an alternative, Kelliher contends that he has satisfied his burden of proving a prima facie case by meeting the "similarly situated test" (Doc. # 26, p. 57), and that the two other SVMO's at the Union Springs plant, Dr. Bruce Carter ["Carter"], a younger African–American, and Dr. Francisco Gonzales ["Gonzales"], a younger Hispanic, were similarly situated employees who received preferential treatment (Doc. # 26, p. 57–58).[10] Specifically, Kelliher alleges that: (1) Carter was allowed to adjust his lunch hour, while Moore did not permit Kelliher to do so, (2) Gonzales allowed his subordinates to abuse time and attendance policies, without being held accountable by Moore; and (3) for several years, Gonzales and Carter were allowed to report late for work (Kelliher Aff., ¶ 34).

Under existing law, Kelliher's allegations are insufficient to show that Gonzales and Carter were accused of the same or similar conduct as he was or that they were similarly situated for purposes of establishing a prima facie case. Kelliher testified in his deposition that Carter's tardiness for work was generally "in the neighborhood of ten minutes" and that Gonzales' "would arrive five to ten minutes after the shift change" (Doc. # 19, exh. 1, Kelliher Dep., p. 87, lines 1–7). That evidence does not reflect misconduct which was as serious or chronic as that for which the plaintiff was terminated. Kelliher failed to present evidence that established that Gonzales or Carter were accused of performance problems of quality or quantity as his; that they were ever accused of failing to follow instructions or insubordination; or that they were ever placed on a performance improvement plan ["PIP"].

Moreover, Kelliher testified that he was not aware of any similar accusations against Gonzales or Carter (Kelliher Dep., p. 76, lines. 3–17). Accordingly, the court finds that the plaintiff has failed to present a prima facie case because he filed to present evidence that the younger minority employees with whom he compares his treatment were similarly situated. *See Holifield*, 115 F.3d at 1563. Accordingly, the court finds that the defendant's motion for summary judgment as to this issue is due to be granted.

### 2. Plaintiff's prima facie case of retaliation

As previously stated, a plaintiff alleging retaliation must establish a prima facie case by showing: (1) the plaintiff engaged in a statutorily protected activity; (2) the plaintiff suffered adverse employment action; and (3) some causal connection exists between the two events. *See Morgan v. Alabama, supra.* The undisputed facts establish the first two elements of a prima facie case. On 27 December 1996, Kelliher filed a complaint with the EEO, a statutorily protected act, and in April 1997, he was terminated from the USDA.

The defendant moves for summary judgment on the retaliation claim by contending that Kelliher has failed to meet his burden of proving that there is a sufficient causal link between his termination and his filing an EEO complaint (Doc. # 20, p. 40). Although the evidence leaves room for serious questioning of the sufficiency of Kelliher's proof on this third element of the prima case, the court cannot agree that he has failed to fulfill his burden.

■ The Court of Appeals has established the plaintiff's "causal link" burden in a motion for summary judgment:

10. The ages of Carter and Gonzales are not in the evidence before the court.

[T]he causal link in the [retaliatory discharge] formula [is not] the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant. Rather, we construe the 'causal link' element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.

*Simmons v. Camden County Board of Ed.,* 757 F.2d 1187, 1189 (11th Cir.1985). At a minimum, a plaintiff must generally establish that the employer was *actually aware* of the protected expression at the time it took the adverse employment action. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993).

Kelliher's evidence establishes that his employer was *actually aware* of his EEO complaint. On 6 January 1997, Moore wrote a memorandum to the plaintiff stating that he "had been advised" that on 27 December 1996, the plaintiff had allegedly been using the telephone at a time when he should have been giving breaks (Doc. # 19, exh. 2, Att.A, p. 26). Moore further stated in the memorandum, that "if [the plaintiff] wish[es] to explain what telephone conference was more important than assisting the slaughter line inspectors, [he (Moore) is] receptive to the explanation" (*Id.*). The plaintiff asserts that "[u]pon receiving the memorandum, he advised Moore that on 27 December 1996, he had been making an EEO complaint about Moore's treatment of him" (Doc. # 26, p. 69). Thus, Moore was not merely aware of the plaintiff's EEO complaint when the plaintiff was terminated in April 1997, he was also aware of the time, manner, and place of Kelliher's complaint.

■ Viewing all the evidence in the light most favorable to the plaintiff and resolving all inferences in Kelliher's favor, as the court must, this court finds that the record establishes that the defendant was aware of the Kelliher's protected activities at the time the adverse employment action occurred. The court further finds that the evidence supports the proposition that the protected expression and the adverse employment action were not wholly unrelated. Therefore, the court concludes that for the purposes of withstanding a motion for summary judgment, Kelliher has carried this portion of his burden.

■ Once a plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. *Goldsmith,* 996 F.2d at 1163. In this case, the defendant contends that the legitimate nondiscriminatory reasons for Kelliher's termination include the following: (1) Kelliher's demonstrated lack of knowledge of his job requirements, (2) his failure to maintain slaughter inspection standards on numerous occasions, (3) the numerous violations found by his supervisors on inspection of his plant, (4) his poor performance in his management duties, (5) his lack of truthfulness, (6) his demonstrated preference for the welfare of the plant in which he worked over the mission of the USDA and his duties, (7) his repeated failure to follow instructions from his supervisors, (8) his insubordination in the face of direct orders, (9) his cavalier attitude concerning his duties and deficiencies, (10) his lack of cooperation with fellow USDA employees, (11) his intimidation and mistreatment/lack of respect for the subordinate employees who worked under his supervision, (12) his disregard for the bargaining agreement with Union members, (13) his inability or unwillingness to accept instruction or training, (14) his failure (inability or unwillingness) to learn from his

mistakes so that he might be rehabilitated, (15) his negligence in the performance of his duties, (16) his excessive delegation of his duties to subordinates, and (17) his failure to take responsibility for his actions (Doc. # 20, p. 44). The court finds that the defendant has satisfied his burden of production.

█ At the summary judgment stage, once the defendant has articulated a legitimate, non-retaliatory reason for the adverse employment action, the burden then shifts back to the plaintiff to raise a genuine factual question as to whether the defendant's stated reason is mere pretext. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913 (11th Cir.1993). The burden to avoid summary judgment at this point in the case has been clearly stated:

> [t]he burden .. is not to show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext, and that the action taken was in retaliation for engaging in the protected activity. Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue.

*Id.* at 921.

█ In response to the defendant's legitimate, non-discriminatory reasons for his termination, Kelliher has stated, in a conclusory manner, that the reasons proffered by defendant are "simply untrue" (Doc. # 26, p. 60). He has not articulated specific facts from which one could infer that his termination was in retaliation to the filing of his EEO complaint. Moreover, he failed to present *any* evidence that his termination was in retaliation for filing his EEO complaint. Instead, the plaintiff cites allegedly discriminating incidents that occurred months, and even years, *before* he filed his EEO complaint.[11] The court therefore finds that Kelliher's unsubstantiated assertions are not enough to withstand a motion for summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## B. Federal District Court Review

The defendant asserts that, although Kelliher is entitled to de novo judicial review of his claims of race discrimination, age discrimination, and retaliation (Doc. # 20, p. 46),[12] his claims of retaliation for whistle-blowing and procedural due process may be reviewed only on the record [13] (Doc. # 20, p. 46). For the reasons which follow, the court disagrees with the defendant's assertions and finds that the plaintiff is entitled to de novo judicial review for all of his claims.

The Civil Service Reform Act of 1978 generally provides that final decisions of the MSPB are reviewable in either the courts of appeals or the Court of Claims. 5 U.S.C. § 7703(b)(1). In such cases, the court may set aside an agency action only if arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, procedurally infirm, or unsupported by substantial evidence. *Id.* § 7703(c).

---

11. For instance, the plaintiff refers to an incident that occurred in September 1995 (Doc. # 20, p. 64). This incident occurred over a year *before* the plaintiff filed his EEO complaint.

12. See 5 U.S.C. § 7703(b)(2).

13. See 5 U.S.C. § 7703(c).

The Act, however, creates an exception for "[c]ases of discrimination." *Id.* § 7703(b)(2). Such cases, known as "mixed cases," include those in which the employee "alleges that a basis for the action was discrimination prohibited by ... section 717 of the Civil Rights Act of 1964 (42 U.S.C.2000e–16) ..." *Id.* § 7702(a)(1)(B). These mixed cases are to "be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C.2000e–16(c)) ... as applicable ...," and are reviewable de novo by the district court. *Id.* § 7703(b)(2); § 7703(c). *See Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

> Read together with the rest of the Act, these sections provide two different types of procedures for employees contesting agency action. If an employee does not allege that "a basis" of the agency action was discrimination, he may appeal an agency decision directly to the MSPB and from the MSPB to the courts of appeals or the Court of Claims. If, however, as in this case, the employee does allege discrimination, he may either immediately file suit in a district court or pursue an administrative procedure.[14]

*Doyal v. Marsh,* 777 F.2d 1526, 1535 (11th Cir.1985) (holding that district court has jurisdiction over civil service claims as well as non-civil service claims). In short, the language of the Court of Appeals' rulings clearly establishes that the statutory exception applies to "cases" rather than to "claims" and that the "mixed case" must be treated as a unit. *Doyal,* 777 F.2d at 1535.

> [B]oth the statute and its legislative history define jurisdiction in terms of "cases" which "involve discrimination," and not in terms of "discrimination claims;" this suggests that the Congress intended district court jurisdiction to extent to all claims in any case involving a charge of discrimination.

*Wiggins v. United Postal Service,* 653 F.2d 219 (5th Cir.1981).[15] Accordingly, this court has jurisdiction over the entire mixed case complaint, including discrimination claims as well as non-discrimination claims. Because Kelliher's non-discrimination claims are properly before this court for de novo review, the defendant's motion for summary judgment as to this issue is due to be denied.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The motion for summary judgment is denied in part and granted in part. The motion is GRANTED as to Kelliher's claims of (a) age discrimination under the ADEA,[16] (b) race discrimination under Title VII,[17] and (c) retaliatory discrimination under the ADEA and Title VII [18]. These claims are hereby DISMISSED with prejudice.

2. The motion is DENIED as to Glickman's assertion of limited judicial review.

---

14. The administrative route consists of an MSPB hearing and decision on the mixed case complaint, followed by a *choice* between judicial review at that point or review of the discrimination claim before the Equal Employment Opportunity Commission. 5 U.S.C. § 7702(a)(3).

15. In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

16. Kelliher's Second Cause of Action in his Second Amended Complaint (Doc. # 18).

17. Kelliher's First Cause of Action in his Second Amended Complaint (Doc. # 18).

18. Kelliher's Fifth Cause of Action in his Second Amended Complaint (Doc. # 18).

Accordingly, Kelliher is entitled to de novo review on all of his remaining claims, to wit, his claim of violation of procedural due process [19] and his statutory claim of retaliation for whistle-blowing.[20]

3. The Clerk of the Court is DIRECTED to forward copies of this order to counsel of record via facsimile.

---

19. Kelliher's Fourth Cause of Action in his Second Amended Complaint (Doc. # 18).

20. Kelliher's Third Cause of Action in his Second Amended Complaint (Doc. # 18).