**Louis THOMAS, Plaintiff,**

v.

**ALABAMA COUNCIL ON HUMAN RELATIONS, INC., Defendant.**

No. CIV.A. 01–F–1236–N.

United States District Court,
M.D. Alabama,
Eastern Division.

Jan. 15, 2003.

---

66. Utah Code Ann. § 78–27–23.

Roianne Houlton Conner, Law Office of Roianne Houlton Conner, Montgomery, AL, for Louis Thomas, plaintiff.

Albert Loring Vreeland, II, Michael L. Thompson, Lehr, Middlebrooks, Price & Proctor, P.C., Birmingham, AL, for Alabama Council on Human Relations, Inc., defendant.

## MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

### I. INTRODUCTION

Plaintiff, Louis Thomas, filed a Complaint (Doc. # 1) on October 22, 2001, bringing claims of race discrimination arising out of the termination of his employment and treatment he allegedly received prior to the termination of his employment pursuant to Title VII, 42 U.S.C. § 2000e, *et seq* ("Title VII").[1] On November 21, 2001, Defendant, Alabama Council on Human Relations, Inc., filed an Answer (Doc. # 5). This cause is presently before the court on Defendant's Motion for Summary Judgment (Doc. # 15) filed on October 18, 2002, and Defendant's Motion to Strike Plaintiff's Affidavit (Doc. # 21) filed on November 27, 2002. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the Court finds, for the reasons set forth in this Memorandum Opinion, that Alabama Council's Motion for Summary is due to be GRANTED and the Motion to Strike Plaintiff's Affidavit is due to be GRANTED in part and DENIED AS MOOT in part.

### II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C.

---

1. Although Plaintiff's Charge of Discrimination with the EEOC also alleged retaliation, this claim is not included in the Complaint, nor is it argued in Plaintiff's opposition to Defendant's Motion for Summary Judgment. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment; the onus is on the parties to formulate arguments. *See, e.g. Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir.1990), *reh'g denied*, 921 F.2d 283 (11th Cir.1990); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F.Supp.2d 1280, 1286 (M.D.Ala.2001). Consequently, the Court will not address Plaintiff's abandoned retaliation claim, but will limit its discussion instead to the race discrimination claims urged by Plaintiff's counsel in opposition to Defendant's Motion for Summary Judgment.

§ 1343 (civil rights), and 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964 as amended). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

### IV. FACTS

The court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

### A. Background

Defendant is a state-wide, private, non-profit organization that acts both as an advocate and a service delivery program whose goal is the promotion and implementation of programs that improve economic conditions, education, and racial relationships for all people. Nancy Spears (hereinafter "Spears") served as the Director of the Defendant's programs at all times relevant to this lawsuit. Plaintiff, an African–American male, who began full-time employment with the Defendant as its Building and Grounds Supervisor on October 14, 1997. During Plaintiff's employment, his job title and responsibilities changed somewhat as discussed below. Plaintiff was primarily employed in Opeli-

ka where Defendant operated a Head Start Program.

## B. The Termination of Plaintiff's Employment

Plaintiff's primary complaint in this lawsuit arises out of the termination of his employment relationship with Defendant on June 19, 2001. Plaintiff's account of the events leading up to the termination of his employment relationship with the Defendant is set forth below. Because he had not received a raise in two years, Plaintiff approached his immediate supervisor, Michelle Pugh (hereinafter "Pugh") about whether he would be receiving a raise in 2001. He believed he was entitled to a raise due to an increase in his workload.

After initially asking Pugh about whether he would be getting a raise, Plaintiff had a meeting on the issue with Pugh and Spears.[2] As it happened, this meeting occurred on a day when Plaintiff had left his work site without signing out to make some purchases at Lowe's. Plaintiff's failure to sign out violated Defendant's procedures, and it is a work rule violation for which Plaintiff had previously been counseled.[3] Spears decided not to give Plaintiff a raise in June of 2001, because, in her view, he was not complying with Defendant's procedures despite repeated warnings to conform his conduct to those procedures. In this meeting, Spears told Plaintiff that he was not going to get a raise because he had violated procedures.

Some period of time later, on June 15, 2001, Plaintiff discovered that he had not been given a raise that he believed he deserved. He confronted his immediate supervisor, Pugh about this fact. She said that she would look into it. Plaintiff was angry and told her that he was going home for the remainder of that work day. He also told Pugh that if he did not receive a raise he was going to resign. Plaintiff intended this threatened resignation as a bluff which he hoped would cause Defendant to give him the raise he was due, but he never told anyone in Defendant's employ that he was not serious about resigning. Pl.'s Dep. at p. 101, line 22 through p. 102, line 7. Later on that day, Plaintiff had a telephone conversation with Pugh to see if she had straightened out the problem with his raise, and she told him she was still working on it.

The next day on which Plaintiff was scheduled to work was June 18, 2001. On that day, Plaintiff had another telephone conversation with Pugh. She told him that she had not been able to secure a raise for him yet. He told her that he was not coming in to work. On the following day, June 19, 2001, Plaintiff called Pugh again and said that he was not coming in because he did not feel that he was being treated right. Pugh told Plaintiff he was "messing up."

Pugh told Spears that Plaintiff said he would quit if he did not receive a raise and that he had left work at noon on Friday, June 15, 2001, and did not return to work on Monday, June 18, 2001. Spears understood Plaintiff's statement and actions as they had been relayed to her by Pugh to mean that Plaintiff had resigned his position, and she decided to accept his resignation. On June 19, 2001, Spears sent a certified letter to Plaintiff informing him that Defendant accepted his resignation.

On June 20, 2001, Plaintiff learned about of the certified letter from Spears accepting his resignation. He had previously scheduled an appointment to see his doctor

---

**2.** The undisputed evidence before the Court establishes that only Spears had the authority to determine whether a particular employee would receive a raise or the amount of any such raise in salary.

**3.** Plaintiff does not dispute these facts.

because he was not feeling well and because he believed that he would need a medical excuse for his absences from work. Plaintiff saw his doctor, and the doctor provided Plaintiff with a note excusing him from work for the entire week which began on June 18, 2001. Plaintiff immediately faxed this medical excuse to Spears. Plaintiff tried to talk to Spears about the situation, but she asked him to turn in his keys and leave the premises.

### C. Plaintiff's Complaints Relating To His Treatment Prior To The Termination Of His Employment

Plaintiff's remaining complaints in this lawsuit have to do with his dissatisfaction with the way in which he claims he was treated prior to the termination of his employment. In this regard, he raises several issues: events which he contends constituted a demotion, a disciplinary probation he received, and comments made to him by Little and Spears which he considered to be racist or harassing.

### 1. Plaintiff's Demotion

When Defendant hired Plaintiff in October of 1997, his immediate supervisor was Terry Mount (hereinafter "Mount"). Plaintiff has not articulated any complaints about how Mount treated him. In October of 1998, Ken Little ("Little") replaced Mount as Plaintiff's direct supervisor. Little remained Plaintiff's direct supervisor until Little resigned after Spears refused to raise his salary. Defendant hired Pugh to replace Little on January 29, 2001, and she became Plaintiff's direct supervisor around the time Little left. While Little was Plaintiff's supervisor, Plaintiff complains that Little changed his dress code from that of a supervisor to that of a worker. According to Plaintiff, about six months after Little became his supervisor (approximately April of 1999), Little changed Plaintiff's job title to working supervisor and changed Plaintiff's job responsibilities from purely supervisory to a blend of supervisory responsibilities and responsibilities for actually working on projects and building things for Defendant. Little also excluded Plaintiff from staff meetings which Plaintiff had previously attended. While it is undisputed that Plaintiff's compensation was not reduced, Plaintiff contends that these acts by Little constituted a demotion. Viewing the facts in the light most favorable to Plaintiff, the non-moving party, the Court assumes *arguendo* that these events taken together constituted a demotion.

### 2. Plaintiff Receives Disciplinary Probation

Plaintiff received a ninety-day probation on June 7, 2000. Defendant's documentation of the probation sets forth a number of reasons for the probation; Plaintiff admits that when he was presented with the memorandum putting him on probation in June of 2000, Spears told him it was for breaking procedures and for an interpersonal relationship with a teacher also employed by Defendant. Pl.'s Dep. at p. 118, line 1 through p. 119, line 19 & Ex. 5 to Pl.'s Dep. Plaintiff does not dispute engaging in some of the conduct for which he received this probation, but he claims that others engaged in similar conduct were not similarly disciplined. *Id.* On August 28, 2000, Spear extended Plaintiff's disciplinary probation for ninety days and documented this decision in a memorandum which Little gave to Plaintiff. Pl.'s Dep. at p. 123, lines 1 –23 & Ex. 6 to Pl.'s Dep. This memorandum outlined the reasons for the extension of the disciplinary probation. *See* Ex. 6 to Pl.'s Dep. On October 27, 2000, Spears sent Thomas another disciplinary memorandum in which she criticized his job performance and pointed out his violations of work rules. Pl.'s Dep. at p. 125, line 1 through p. 127, line 22 & Ex. 7 to Pl.'s Dep. On December 1, 2000, Spear

removed Plaintiff from probation; Spears informed Plaintiff of this decision by a written memorandum which Little delivered to Plaintiff. Pl.'s Dep. at p. 128, lines 4–18 & Ex. 8 to Pl.'s Dep. Plaintiff testified that this was the only time Defendant put him on probation. Pl.'s Dep. at p. 128, lines 16–18.

### 3. Plaintiff's Complaints About Abusive Comments

Plaintiff appears to complain that certain statements made in his workplace constituted a racially hostile working environment. Specifically, he testified that Little once upset him by addressing him with the salutation "hey, little black boy." Pl.'s Dep. at p. 48, lines 8–17. Plaintiff testified that this incident occurred about a year before Little left his employment with Defendant.[4] Pl.'s Dep. at p. 51, lines 10–20. Additionally, Plaintiff's deposition included reference to hearsay of which Plaintiff was made aware by another employee relating to a single instance of the use of a racist slur by Little which was not made in Plaintiff's presence. Plaintiff testified that employee, Brenda Sims, told him that Little once said "I don't see how you can work with a bunch of niggers." Pl.'s Dep. at p. 45, lines 6–10. Plaintiff testified that he believed that this incident also happened about a year before Little left his employment with Defendant. Pl.'s Dep. at p. 51, lines 10–20. Plaintiff's only other complaints about statements by Little he considered racist had to do with Little lying to Spears about whether Plaintiff had called in to work. Pl.'s Dep. at p. 50. Line 15 through p. 52, line 12.

In addition to his complaints about Little's statements, Plaintiff also complains about certain statements made by Spears. First, Plaintiff complains that Spears responded to Plaintiff's repeated requests for time off when his grandfather was sick and shortly thereafter when his grandfather died by stating "I don't understand you black people and y'all's culture, why do y'all take death so hard." Pl.'s Dep. at p. 52, line 17 through p. 53, line 18. Plaintiff found this statement to be racist because Spears said "you black people" instead of just stating that she didn't understand black people and their culture. Pl.'s Dep. at p. 53, line 20 through p. 54, line 2. While this is the only racist statement Plaintiff attributes to Spears, he also complains about her making other abusive comments which were not of a racial nature and which were substantially similar to those made to employees outside his protected class, such as calling him an "S.O.B."[5] Pl.'s Dep. at p. 54, line 3 through p. 56, line 18. Moreover, Plaintiff explained at his deposition that Spears' motive for being hard on him was to make him a better supervisor. Pl.'s Dep. at p. 55, line 2 through p. 56, line 18.

## V. DISCUSSION

### A. Motion to Strike

At the outset, the Court will address the Defendant's Motion to Strike Plaintiff's Affidavit (Doc. # 21). Defendant contends that the affidavit submitted by Plaintiff in opposition to Defendant's Motion for Summary Judgment is due to be stricken in its entirety. Defendant asserts that it is due to be stricken because it contains inadmissible hearsay, speculation, conjecture, and

---

4. Little left in February of 2001, so from Plaintiff's testimony it appears that this occurred in February of 2000.

5. In the context of this case, the Court does not consider these racially-neutral comments identical to those comments made to Caucasian employees to be part of a pattern of acts contributing to a racially-hostile working environment.

legal conclusions and because it is not based on Plaintiff's personal knowledge. Additionally, Defendant argues that portions of Plaintiff's affidavit are due to be stricken because they contradict Plaintiff's unambiguous prior deposition testimony. This Court issued an Order directing Plaintiff to respond to Defendant's Motion to Strike Plaintiff's Affidavit (Doc. # 23). In his rather conclusory response (Doc. # 24), Plaintiff fails to cite any legal authority or to respond to any of the specific points Defendant raised. For the reasons discussed below, the Court finds that the Defendant's Motion to Strike Plaintiff's Affidavit is due to be GRANTED in part and DENIED in part as MOOT.

■■■ Federal Rule of Civil Procedure 56(e) makes it plain that affidavits submitted in opposition to a motion for summary judgment, such as the affidavit at issue here,

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein.

Fed.R.Civ.P. 56(e). The requirements of Rule 56 make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper. *See, e.g., Story v. Sunshine Foliage World, Inc.,* 120 F.Supp.2d 1027, 1030 (M.D.Fla.2000). *Accord, Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir.2000). Affidavits which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike. *Givhan v. Electronic Eng'rs, Inc.,* 4 F.Supp.2d 1331, 1334 (M.D.Ala.1998). However, if an affidavit contains some improper material, the court need not strike the entire affidavit, rather it may strike or disregard the improper portions and consider the remainder of the affidavit. *Id.* at p. 1334 n. 2.

■ One issue raised commonly in motions to strike all or part of an affidavit is the "sham affidavit" concept, which arises when there is a clear inconsistency between factual assertions in an affidavit submitted in conjunction with a motion for summary judgment and prior deposition testimony. A district court addressing conflicting affidavits and depositions when ruling on a motion for summary judgment must be mindful of two competing policies. On the one hand, there is the purpose of summary judgment which is to "separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied,* 815 F.2d 66 (11th Cir.1987). The rule is needed to "spare the party requesting summary judgment the needless pain and costs of a law suit when a party's prior statements show no factual dispute exists." *Tippens,* 805 F.2d at 955 (Hill, J., specially concurring). On the other hand, there is the recognition that the credibility of witnesses and weight of the evidence are issues for the trier of fact. *Id.* at 954.

■ Given these competing policies, the Eleventh Circuit has developed a standard by which to determine when the contradictory nature of testimony renders that testimony inappropriate for consideration as creating a genuine issue of material fact. In this circuit, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656, 657 (11th Cir.1984). Therefore, before disregarding an affidavit, a court must find some inherent inconsistency between the affidavit and deposition. *Rollins v. TechSouth, Inc.,*

833 F.2d 1525, 1530 (11th Cir.1987). It is the inherent inconsistency which renders the subsequent affidavit a "sham." *See Van T. Junkins & Assocs., Inc.,* 736 F.2d at 657.

█ Once a court has found that the party is attempting to create an issue of fact by offering a "sham" affidavit, the interest in preventing parties from having to proceed when there is no real issue of fact outweighs the interest in allowing the fact-finder to weigh issues of credibility at trial. Holding to the contrary would mean that plaintiffs could "thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Ill. v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168 (7th Cir.1996). Thus, portions of affidavits which are clearly inconsistent with prior deposition testimony are due to be stricken. *See, e.g., Rice v. Barnes,* 149 F.Supp.2d 1297, 1300 (M.D.Ala.2001).

The Court's review of Plaintiff's affidavit leads it to conclude that it contains legal conclusions and other conclusory statements, the proper factual predicate for which is wholly absent from the affidavit. Plaintiff's affidavit also contains what appears to be double hearsay which would not be admissible at trial. The Court is also convinced that portions of the affidavit directly conflict with Plaintiff's prior, unambiguous, sworn, deposition testimony. Furthermore, Plaintiff makes no attempt to provide specifics such as dates or even approximate time periods which might have assisted the Court in its analysis.

While portions of the affidavit are doubtlessly ripe for striking under the applicable legal standard and improper summary judgment evidence, the Court does not find that the entire affidavit is due to be stricken. In the interests of judicial economy, the Court will restrict its discussion of the merits of Defendant's Motion to Strike Plaintiff's Affidavit to those challenged portions of the Plaintiff's affidavit which could in some way influence the issues presented by the Defendant's Motion for Summary Judgment. Deficiencies which have no bearing on the outcome of summary judgment need not be addressed, and to the extent that Defendant's Motion to Strike is addressed to such issues, it can be denied as moot. Thus, as set forth below, the Defendant's Motion to Strike Plaintiff's Affidavit is GRANTED in part and DENIED in part as MOOT.

Several parts of Plaintiff's affidavit are clearly inconsistent with his prior deposition testimony and due to be stricken.

- In his affidavit, Plaintiff states that he was hired as a Maintenance Supervisor, but in his deposition he admitted that the actual job title of the position he held when hired was Building and Grounds Supervisor. Pl.'s Dep. at pp. 42–43. In the face of this direct conflict, the contradictory statement in the affidavit is due to be STRICKEN.

- In his affidavit, Plaintiff states that he was placed on six months probation for dating a teacher and that this probation was extended to one year without explanation. At his deposition, Plaintiff testified that he was only placed on probation one time and that it was for an interpersonal relationship *and* other admitted violations of Defendant's policies and procedures. Pl.'s Dep. at p. 118, line 1 through p. 119, line 19; & p. 128, lines 16–18. Plaintiff's testimony makes it quite clear that the probation was for ninety days and that it was extended for an additional ninety days by a memorandum which explained to Plaintiff why it was being extended. Pl.'s Dep. at p. 118, line 1 through p. 119, line 19; p. 123, lines 1–23; & Ex. 6 to Pl.'s Dep. Consequently, this inherent in-

consistency between Plaintiff's affidavit and his deposition testimony requires the improper portions of the affidavit to be STRICKEN.

- In his affidavit, Plaintiff states that Pugh called him "big boy" and that he has been discriminated against by remarks Pugh made. Plaintiff's deposition testimony belies this statement. While Plaintiff did testify in his deposition that Pugh called him "big boy," [6] he repeated testified that she did *not make any racist remarks to him. Compare* Pl.'s Dep. at p. 85, line 21 through p. 86, line 6 *with* Pl.'s Dep. at p. 78, lines 5–17; p. 137, line 7 through p. 138, line 1; p. 144, lines 5–17. Given Plaintiff's unequivocal statements at his deposition that Pugh did not made racially offensive remarks or racist statements to him, Plaintiff's attempts in his affidavit to include statements by Pugh in the list of racially offensive remarks must be disregarded and those portions of the affidavit are due to be STRICKEN.

*B. Timeliness of Plaintiff's Charge of Discrimination With the EEOC*

On June 26, 2001, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation. Plaintiff alleges, and Defendant does not dispute, that Plaintiff filed this lawsuit within ninety days of his receipt of the EEOC's Dismissal and Notice of Rights letter relating to his Charge of Discrimination. Defendant does not concede, however, that Plaintiff has satisfied all of the procedural prerequisites to bringing his claims pursuant to Title VII. Defendant argues that some of Plaintiff's claims about how he was treated during his employment with Defendant are barred because he failed to file a timely charge of discrimination with the EEOC. Plaintiff contends that the allegedly untimely claims can be litigated because as part of a continuous course of conduct in which several of Defendant's agents, including Plaintiff's last supervisor, participated they constitute a "continuing violation." Plaintiff's argument is unavailing because as the Eleventh Circuit has noted the United States Supreme Court recently "eschewed the use of the continuing violation doctrine in hostile work environment cases[ ]" and "essentially redefined the application of statutes of limitations" to hostile work environment cases. *Shields v. Fort James Corp.*, 305 F.3d 1280, 1281 (11th Cir.2002). The proper paradigm for examining the timeliness of the filing of EEOC charges of discrimination for purposes of Title VII is outlined below.

All of Plaintiff's claims in this lawsuit are brought pursuant to Title VII. Title 42 U.S.C. § 2000e-(5)(e)(1) specifies the prerequisites that a plaintiff must satisfy before filing a private civil action under Title VII. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002). According to this provision, "[a] charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). *Accord, Pijnenburg v. West Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied*, 273 F.3d 1117 (11th Cir.2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred."). This re-

---

**6.** Indeed, in context, it does not appear that Plaintiff considered this arguably race-neutral statement to be offensive.

quirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

■ The United States Supreme Court has explained that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). By choosing this relatively short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.* Indeed, this procedural rule, is not a mere technicality, but an integral part of Congress' statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1994). Thus, if a plaintiff fails to file an EEOC charge before the 180–day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies. *See, e.g., Brewer v. Alabama,* 111 F.Supp.2d 1197, 1204 (M.D.Ala. 2000).

Of course, the determination of whether a plaintiff has filed a timely EEOC change depends on when the alleged unlawful employment practice "occurred." The United States Supreme Court recently provided further clarification of the nature of this inquiry and set forth different standards for claims involving "discrete acts" and "hostile environment" allegations. *See generally, Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106. *Accord, Shields,* 305 F.3d at 1281.

■ In cases involving discrete retaliatory or discriminatory acts such as termination of employment, failure to promote, denial of transfer, or refusal to hire, a discrete retaliatory or discriminatory act occurs on the day that it happens. *Morgan,* 122 S.Ct. at 2070, 2073. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 2073. Consequently, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2072. Each such act starts a new clock for filing charges. *Id.* Moreover, the limitations period begins to run when an employee received notice of the allegedly discriminatory act, not when the consequences of the decision become painful to the employee. *See, e.g., Ricks,* 449 U.S. at 257, 101 S.Ct. 498; *Brewer,* 111 F.Supp.2d at 1205. The 180–days begins to run when the challenged employment decision is made and the employee receives notice of it. *Ricks,* 449 U.S. at 259, 101 S.Ct. 498, *Brewer,* 111 F.Supp.2d at 1205.

Consequently, a plaintiff can only litigate his claims arising out of a demotion, a disciplinary action such as probation, or the termination of his employment if he made a proper complaint to the EEOC within 180 days of each discrete event. *See, e.g., Morgan,* 122 S.Ct. at 2070, 2073 (termination of employment constitutes a discrete act of discrimination); *Bauer v. Board of Supervisors,* 44 Fed.Appx. 194, 198–200 (9th Cir.2002) (disciplinary acts and demotions "fall squarely within the category of discrete discriminatory acts discussed by the [Supreme] Court in *National Railroad[.]* "); *Sain v. American Red Cross,* 233 F.Supp.2d 923, 929 (S.D.Ohio 2002) (disciplinary actions, including probation, constitute discrete acts of discrimination); *Henderson v. Montgomery County, Kan., Bd. of County Comm'rs,* 213 F.Supp.2d 1262, 1272

(D.Kan.2002) (placement on transfer and placement on probation not actionable because the discrete acts of discrimination occurred more than the statutorily allowable period before the filing of the EEOC charge).

With respect to claims arising out of allegations of a "hostile environment," determination of the timeliness of a charge of discrimination is approached in a somewhat different fashion.

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative affect of the individual acts.

*Morgan,* 122 S.Ct. at 2073 (internal citations omitted). In cases involving "hostile environment" claims, the timely filing provision of Title VII only requires that a Title VII plaintiff file a charge within the specified number of days after "an act contributing to the claim occurs." *Id.* at 2074. Other component acts of the hostile environment which fall outside the statutory time period may be considered for purposes of determining liability so long as at least one act contributing to the claim occurs within the statutory time period. *Id. Accord, Shields,* 305 F.3d at 1282.

■ In cases in which there are allegations of both hostile environment and discrete acts of discrimination, courts are to apply the appropriate analysis to each. *See generally, Morgan,* 122 S.Ct. at 2070–77. An untimely discrete act claim cannot be saved by including it in a lawsuit with a hostile environment claim. *See Morgan,* 122 S.Ct. at 2077. In some circumstances, the time period for filing a charge of discrimination with the EEOC is subject to equitable doctrines such as tolling or estoppel.[7] *Id.*

In the present case, Plaintiff filed his EEOC charge on June 26, 2001. Therefore, the charge is timely only if the unlawful employment actions of which he complains "occurred" on or after December 27, 2000. *See, Morgan,* 122 S.Ct. at 2070 (holding that a party must file an EEOC charge within 180 days from the date the unlawful act occurred or lose the ability to recover for it). In this action, Plaintiff appears to complain[8] of an allegedly hos-

---

7. Plaintiff does not argue that these equitable doctrines are applicable in this case.

8. Plaintiff's Response To Defendant's Motion For Summary Judgment (Doc. # 20) fails to make clear arguments with respect to the nature of the claims he urges and the appropriate legal analysis of each: nevertheless, he includes in the "Facts" section of his brief a description of claims arising out of: (a) the termination of his employment, (b) an allegedly hostile work environment, (c) a series of incidents he contends constituted a demotion, and (d) a disciplinary probation he received. Moreover, Plaintiff's Response does not contain a single citation to his deposition, his affidavit, or to any documentary evidence. The lack of clarity in Plaintiff's Response made this Court's analysis of this case more difficult, but Plaintiff's failure to comply with

this Court's directive in Section 2 of the Uniform Scheduling Order (Doc. # 9), which requires discussions of the evidence in briefs relating to summary judgment to include specific citations to the supporting deposition or document, further confounded this Court's analysis of the merits of the motion at hand. On prior occasions, this Court has held that similar failures by the parties to designate *specific facts* within the record showing the presence of a genuine dispute for trial in violation of the dictates of the Uniform Scheduling Order constituted an independent ground for granting summary judgment. *See, e.g., Johnson v. Federal Express Corp.,* 147 F.Supp.2d 1268, 1271 (M.D.Ala.2001) (DeMent, J.) (granting summary judgment on all of plaintiff's federal claims where Plaintiff's evidence was not properly produced and cited).

tile working environment and of several discrete acts of alleged discrimination;[9] the timeliness of each is addressed in turn.

Defendants contend that Plaintiff's claims of a racially hostile work environment were not timely taken to the EEOC. These claims arise out of vulgar and abusive language directed to Plaintiff. Most of the acts on which this claim is based arise out of alleged conduct by Ken Little, who was Plaintiff's direct supervisor from October 9, 1998 to February 23, 2001 at the latest. The only racial statements Plaintiff attributes to Little occurred more than a year before Little left his employment with the Defendant. Pl.'s Dep. at p. 51, lines 10–20. While Plaintiff also complains in his Affidavit that Nancy Spears used inappropriate, vulgar, and abusive language on a "routine basis," at his deposition he clearly testified that he was not contending that Spears comments and rough treatment of him was based on his race and admitted that she spoke the same way to other employees, including white employees. See Pl.'s Dep. at pp. 52–56. The only comment of an allegedly racist nature Plaintiff attributes to Spear was a statement she made about not understanding black culture when Plaintiff requested additional time off after his grandfather's death. See Pl.'s Dep. at pp. 52–54 & 75. Even assuming that this statement could contribute to a racially-hostile working environment, there is no evidence before this Court that this statement was made after December 27, 2000. Given that there is no

evidence from which a reasonable jury could find that any of the acts which contributed to the racial hostile environment occurred within the 180 day time period before Plaintiff filed his Charge of Discrimination with the EEOC, the Court finds that Defendant is entitled to summary judgment as a matter of law on Plaintiff's claims of a racially-hostile working environment because he did not make a timely complaint to the EEOC.[10]

Finally,[11] Plaintiff raises complaints about his treatment during the time he was under Ken Little's supervision which range from demotion (including a change in title, change in required work attire, change in job responsibilities, and exclusion from certain supervisory meetings) and a disciplinary probation. The undisputed facts before the Court make it plain that these discrete acts of discrimination all occurred more than 180 days before Plaintiff filed his Charge of Discrimination with the EEOC and consequently, Plaintiff cannot litigate them in this suit.

Thus, Plaintiff's failure to file a timely Charge of Discrimination with the EEOC precludes him from bringing all of his claims pursuant to Title VII except the claim arising from the termination of his employment. For this reason, Defendant is entitled to summary judgment on Plaintiff's claims relating to his demotion, his disciplinary probation, and the racially-hostile working environment. Plaintiff's remaining claim of race discrimination in

---

9. Claims arising out of Plaintiff's main complaint, the termination of his employment in June of 2001, were timely presented to the EEOC, and this issue is not raised by Defendant's motion.

10. In the alternative, the Court finds Plaintiff's proffered evidence of the existence of an actionable racially-hostile working environment insufficient as a matter of law.

11. Although, Plaintiff mentions in his opposition to Defendant's Motion for Summary

Judgment that Pugh, called him "big boy," he cannot contend that he took this comment as a racist statement because to do so would directly contradict his clear deposition testimony that Pugh never made any comments to him that he thought was racist and that the only people who had made comments he thought were racist were Little and Spears. Pl.'s Dep. at p. 137, line 15 through p. 138, line 1.

the termination of his employment is addressed below.

### C. Plaintiff's Claims Relating To The Termination Of His Employment

Plaintiff contends that Defendant terminated his employment because of his race. Defendant argues that it is entitled to summary judgment on this claim because Plaintiff cannot make out a *prima facie* case of discrimination with respect to the termination of Plaintiff's employment and because it has proffered a legitimate, non-discriminatory reason for the actions it took with respect to the termination of Plaintiff's employment. Plaintiff appears to contend that he has established a *prima facie* case of discrimination by pointing to facts which he contends establish that he did not engage in the conduct alleged by Defendant. For the reasons set forth below, the Court finds that Defendant is entitled to summary judgment because Plaintiff has failed to establish a *prima facie* case. Moreover, even assuming *arguendo* that Plaintiff has established a *prima facie* case, the Court further finds that no reasonable jury could find that Defendant's proffered legitimate, non-discriminatory reason was a pretext for discrimination.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a). The critical element in establishing wrongful race discrimination in violation of Title VII is discriminatory intent. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Such discriminatory intent can be established through either direct or cir-

cumstantial evidence. *See, e.g., Davis v. Qualico Miscellaneous Inc.,* 161 F.Supp.2d 1314, 1319 (M.D.Ala.2001). Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence [12] of the employer's intent, the Court applies some version of the familiar tripartite burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *See, e.g., Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–28 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). The purpose of the *prima facie* case is to show an adverse employment decision that resulted from a discriminatory motive. *See, e.g., Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1143 (11th Cir.1983).

 In this case, Plaintiff claims that the termination of his employment was discriminatory.

A plaintiff's prima facie case for a discharge-discrimination claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged.

*Davis,* 161 F.Supp.2d at 1319. Importantly, an employee cannot establish a *prima facie* case of discrimination by simply ar-

---

**12.** Because Plaintiff offers nothing which could conceivably be considered direct evidence, the Court will analyze this motion for summary judgment under the circumstantial evidence paradigm.

guing that he belonged to a protected class and that he did not engage in the conduct for which he alleges his employment was terminated. *See, e.g., Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.), *superseded in part on denial of reh'g,* 151 F.3d 1321 (11th Cir.1998) [13]; *Cooper v. Diversicare Mgmt. Servs. Co.,* 115 F.Supp.2d 1311, 1318–19 (M.D.Ala. 1999).

■ The parties do not dispute that Plaintiff is a member of a protected class and that he was qualified for the position he held. Plaintiff argues that he did not resign and that he was discharged. Defendant argues that it accepted Plaintiff's resignation and that it did not discharge him. Given that the parties disagree over whether Plaintiff was discharged and that this Court must view the evidence in the light most favorable to the Plaintiff, the Court will assume that Plaintiff was discharged and turn to the fourth requirement of the *prima facie* case. Here Plaintiff's claim fails. As previously explained, Plaintiff must show either that he was replaced by someone outside of the protected class or that a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. There is no evidence from which a reasonable jury could find that Plaintiff was replaced by someone outside of his protected class, nor is there any evidence from which a reasonable jury could find that a similarly-situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. Indeed, Plaintiff makes no attempt to establish either of these facts. Consequently, it is quite clear that Plaintiff has failed to establish the requisite *prima facie* case, and

Defendant's Motion for Summary Judgment on this claim is due to be GRANTED. *See, e.g., Maniccia v. Brown,* 171 F.3d 1364, 1370 (11th Cir.1999) (affirming summary judgment for employer where discharged employee failed to present evidence from which a reasonable jury could find a *prima facie* case of disparate treatment); *Davis,* 161 F.Supp.2d at 1319–21 (granting summary judgment to employer on claim that employee's employment was terminated because of his race where employee could not establish the fourth element of the *prima facie* case).

■ Nevertheless, even if the Court were to assume that Plaintiff had made out a *prima facie* case, he would lose. Once the plaintiff establishes a prima-facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir.1997); *Davis,* 161 F.Supp.2d at 1321. The employer's burden is "exceedingly light." *Id.* This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See, e.g., Davis,* 161 F.Supp.2d at 1321.

■ Once the employer offers this legitimate, non-discriminatory reason, the burden returns to the employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F.Supp.2d at 1322 (*cit-*

---

**13.** The Eleventh Circuit Court of Appeals withdrew part of its opinion in this case on rehearing and substituted a new section which can be found at *Jones v. Bessemer Carr-* *away Med. Ctr.,* 151 F.3d 1321 (11th Cir. 1998). Nothing in this Memorandum Opinion is based on the portion of the opinion in *Jones* which was withdrawn on rehearing.

*ing Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir.2000) (*en banc*)). Where an employer has subjected an employee to disciplinary action or terminated the employment of the employee for misconduct, the employee may show that the employer's proffered reason is pretextual by setting forth evidence that other employees, not within the plaintiff's protected class, who engaged in similar acts were not similarly treated. *Davis,* 161 F.Supp.2d at 1322.

Some cases suggest that a plaintiff in these circumstances may also establish pretext by showing that the employer's proffered reasons have no basis in fact because the employee did not engage in the conduct on which the employer acted. *See, e.g., Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir.1982) (noting this means of proof in *dicta* in a case where employee conceded that he had violated the work rule on which his termination was based); *Davis,* 161 F.Supp.2d at 1322 (*citing Anderson* in overview of paradigm).

Other cases suggest that reliance on this method of proof of pretext is "problematic." *Cooper,* 115 F.Supp.2d at 1319 (*citing Walker v. NationsBank of Fla.,* 53 F.3d 1548, 1564 (11th Cir.1995) (Johnson, J., specially concurring)).

> Evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer did not rely on the reason in making the employment decision. Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information. It is obviously not a violation of federal employment discrimination laws for an employer to err in assessing the performance of an employee. Thus, establishing pretext is not merely demonstrating that the employer made a mis-

take, but that the employer did not give an honest account of its behavior.

*Id.* (internal citations omitted). Rather than simply disputing whether he engaged in the conduct at issue, the employee could establish pretext by "presenting evidence tending to show that the predicate facts underlying the proffered reason were false" *and* that "the employer knew them to be false at the time of [its] purported reliance" or that "the proffered reason may involve a disputed fact of a kind that it is improbable that the employer could be mistaken about it." *Walker,* 53 F.3d at 1564 n. 7; *Cooper,* 115 F.Supp.2d at 1320.

▪ In this case, Plaintiff admits that he told his immediate supervisor that he would quit if he did not receive a raise and that he never told anyone in Defendant's employ that he was bluffing when he made this statement. Plaintiff also admits that he left work for several days after stating that he would quit if he did not receive a raise because he was angry about not receiving the raise he believed he deserved. Finally, Plaintiff admits that he did not return to his employer until after he received word of Spear's letter accepting his resignation. Plaintiff does not attempt to argue that any other employee outside of the protected class engaged in a pattern of conduct nearly identical to his. Indeed, Plaintiff's sole argument that Defendant's reason for terminating his employment is pretextual is to argue that he did not resign. What Plaintiff's argument misses is that his employer could have reasonably interpreted his conduct to be an offer to resign capable of being accepted, and he has presented no evidence from which a reasonable jury could find that was not the case.

Moreover, where, as here, the parties appear to disagree over whether the employer actually discharged the employee, this case is one which does not neatly fit

into the standard analytical paradigm, but one in which this Court must review the evidence before it to determine whether a fact-finder could reasonably conclude that the plaintiff has been a victim of discrimination. *See, e.g., Davis,* 161 F.Supp.2d at 1322. Given Plaintiff's record of admitted disciplinary warnings and his undisputed continued violations of Defendant's work rules, it is clear that Defendant had reasonable, legitimate reason to discharge Plaintiff. Moreover, the record is devoid of evidence that this reason, if exercised, would have been racially discriminatory. Defendant had no motive to discriminate against Plaintiff; if it wanted to discharge him, it had a valid non-discriminatory reason to do so. Thus, it makes little difference if Plaintiff resigned or was discharged in these circumstances. If he resigned, then his employment was not terminated in a racially discriminatory fashion. If Defendant discharged him, Plaintiff has no evidence that the discharge was for a discriminatory reason. Either way, Plaintiff loses on his racial discrimination claim. *See, e.g., Davis,* 161 F.Supp.2d at 1322–23. Thus, for these additional reasons, Defendant's Motion for Summary Judgment on Plaintiff's claim that his employment was terminated for a racially discriminatory reason is due to be GRANTED.

## VI. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

(1) Defendant's Motion to Strike Plaintiff's Affidavit (Doc. # 21) is GRANTED IN PART and DENIED IN PART AS MOOT.

(2) The Defendant's Motion for Summary Judgment (Doc. # 15) is GRANTED.

(3) The pretrial hearing and trial previously scheduled are CANCELED.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.