**Leo DAVIS, Plaintiff,**

v.

**QUALICO MISCELLANEOUS INCORPORATED, Defendant.**

No. Civ.A. 00–T–1686–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 26, 2001.

Richard D. Lively, Prattville, AL, for Leo Davis, plaintiff.

Bruce Johnson Downey, III, Capell Howard PC, Montgomery, AL, for Qualico Miscellaneous, Inc., defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Leo Davis, an African–American, brings this lawsuit against defendant Qualico Miscellaneous Incorporated, claiming a racially discriminatory and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17.[1] Juris-

---

1. Davis originally filed his complaint pro se, but is now represented by counsel. His origi-

diction is proper under 42 U.S.C.A. § 2000e–5. Davis seeks back pay, reinstatement ·to his former job, damages, costs, and attorney's fees.

This lawsuit, which is now before the court on Qualico's motion for summary judgment, presents the somewhat unusual question of how to address discrimination and retaliation discharge claims on a summary-judgment motion when the defendant contends that it did not, in fact, discharge the plaintiff. For the reasons discussed below, the court will grant Qualico's summary-judgment motion.

## I. BACKGROUND

In making its determination on summary judgment, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Accordingly, the facts, as gathered from the affidavits, deposition testimony, and other evidence submitted by the parties but viewed in Davis's favor, are as follows.[2]

Davis was hired by Qualico as a welder in January 1998. In March 1998, Qualico gave Davis a written warning indicating that he was in violation of the company's attendance policy. Davis had violated the tardiness and partial absence policy by coming to work late or leaving early on 11 occasions over a period of two and half months.[3] The document stated that Davis would be suspended for three days for further violations of the rule. Davis signed this warning.[4]

On December 7, 1998, Davis received a second written warning. Davis had again violated the tardiness and partial absence policy, this time by coming to work late or leaving early on ten occasions in less than three months.[5] The notice, signed by Davis, warned that further violation of the policy would result in a three-day suspension.[6]

On March 1, 1999, Davis received a three-day suspension for violation of Qualico's attendance policy. Again, the cause was Davis's violation of the tardiness and partial absence policy, with eight unexcused absences in less than three months.[7] The notice, signed by Davis, stated that further violations of the attendance policies would result in discharge.[8]

In addition, after meeting with Davis about his suspension, Qualico placed a note in Davis's personnel file stating that Davis had threatened that he would "get" Duane

nal complaint contained a number of claims. Two of these claims, discrimination based on disability and age, have now been expressly disavowed in Davis's response to the summary-judgment motion. Plaintiff's opposition to summary judgment, filed August 21, 2001, at 2.

2. Davis's response to the summary-judgment motion states that he incorporates the evidence presented by Qualico and that he does not dispute the contents of that evidence; also Davis has offered no additional evidence of his own. Plaintiff's opposition to summary judgment, filed August 21, 2001, at 3.

3. Defendant's motion for summary judgment, filed July 27, 2001, attached affidavit of

Duane Metzler, exhibit A (employee warning notice dated March 25, 1998). Duane Metzler is the plant manager for Qualico. *Id.*, affidavit of Duane Metzler at 1.

4. *Id.*, exhibit A.

5. *Id.*, exhibit B (employee warning notice dated December 7, 1998).

6. *Id.*

7. *Id.*, exhibit C (employee warning notice dated March 1, 1999).

8. *Id.*

Metzler, the plant manager, "either physically or legally." [9]

Sometime in the spring of 1998, after receiving his first warning for poor attendance but before receiving the second warning or the suspension, Davis filed an administrative charge with the Equal Employment Opportunity Commission (EEOC), claiming wage discrimination and racial name-calling. Qualico claims, and Davis does not dispute, that the company investigated the charges and found there was no basis for the wage-discrimination charge but that "nicknames were being used by employees who did not believe that they were causing offense." [10] Davis's EEOC charge resulted in a negotiated settlement agreement, in which Qualico agreed (1) to treat all employees the same with regard to conditions of employment, regardless of race; (2) assure all supervisory personnel refrain from using derogatory language to refer to employees; and (3) not retaliate against Davis. [11] The agreement is dated May 28, 1999.

On September 22, 1999, Davis was given a written warning for violating the attendance policy, his fourth such written notice. This time, the warning noted 18 absences in a two-month period. [12] Although his previous warning had stated he would be discharged for further violations of the attendance policy, Qualico chose only to give him the written warning. The warning, signed by Davis, indicates that further violations would result in a three-day suspension. [13]

After the September 1999 warning, the parties differ in their rendition of the events. Qualico claims that, on February 8, 2000, Davis gave notice that he would quit Qualico at the end of the week. Davis disputes this, saying that he did not resign and did not tell anyone he had resigned. February 11, 2000, was Davis's last day of work at Qualico.

On May 19, 2000, Davis filed another administrative charge with the EEOC, this time challenging his "discharge." The EEOC closed its investigation of the complaint on September 7, 2000, without establishing any violations. Davis subsequently filed this lawsuit in this court.

## II. SUMMARY–JUDGMENT STANDARD

Summary judgment can be granted only if, after viewing evidence and inferences in the nonmovant's favor, the court finds that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate that summary judgment is inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

To this end, the non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of his or her pleadings. Fed.R.Civ.P. 56(e). The Eleventh Circuit Court of Appeals has recently emphasized that this "summary judgment rule applies in job discrimination just as in other cases." *Chapman v. AI Transport*, 229 F.3d 1012,

---

9. *Id.*, exhibit D (statement dated March 1, 1999).

10. *Id.*, affidavit of Duane Metzler at 2.

11. A copy of the agreement is attached to Davis's complaint, filed December 11, 2000.

12. *Id.*, exhibit E (employee warning notice dated September 22, 1999).

13. *Id.*

1026 (11th Cir.2000) (en banc) (noting that neither party has a lesser or greater burden at the summary-judgment stage of discrimination cases than in other kinds of cases). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making this determination, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. RACIALLY DISCRIMINATORY DISCHARGE

■ For purposes of summary judgment in employment discrimination cases, the relative burdens of production and proof shift according to the kind of evidence proffered by the plaintiff to show discriminatory intent: if the plaintiff offers direct evidence,[14] then the defendant must prove by a preponderance of the evidence that the same employment decision would have been made regardless of discriminatory intent; if, instead, the plaintiff offers circumstantial evidence, the plaintiff must first establish a prima-facie case of discrimination and, if successful, the defendant must respond with legitimate, nondiscriminatory reasons for the adverse employment decision, which the plaintiff finally must discredit as pretextual. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330–31 (11th Cir.1998). Because Davis offers no direct evidence, the court will analyze this motion for sum-

mary judgment under the circumstantial-evidence burden-shifting framework.

### A. Prima-facie Case for Racial Discrimination

■ A plaintiff's prima-facie case for a discharge-discrimination claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984). These elements can have slightly more specific formulations according to the particular theory of discrimination alleged. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973) ("The facts necessarily will vary in [employment discrimination] cases, and the specification ... of the prima-facie proof required [for a particular theory of discrimination] is not necessarily applicable in every respect to differing factual situations.").

Qualico does not dispute that, because Davis is African–American, he is a member of a protected class.[15] Qualico further does not dispute that Davis was qualified for the job.[16]

Davis and Qualico disagree over whether Davis was discharged. Because the evi-

---

**14.** Direct evidence is "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998).

**15.** Defendant's memorandum in support of summary judgment, filed July 27, 2001, at 11.

**16.** *Id.*

dence must be viewed in the light most favorable to Davis, the court will assume that Davis was discharged, and the court will turn to the fourth requirement of a prima-facie case.

To survive summary judgment, Davis must show, as stated, that he was either (a) replaced by someone who was not a member of his protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged.

Davis was replaced by an African–American, so he cannot claim to have been replaced by someone who is not a member of his protected class.[17] Davis does, however, claim that similarly situated employees who are not members of the protected class engaged in nearly identical conduct and were not discharged. Davis did not produce an affidavit or any other evidence in opposition to the summary-judgment motion, but instead adopted the evidence presented by Qualico.[18] The court now turns to that evidence.

■ In his deposition, Davis claims to have kept a notebook where he "wrote down all employees when they missed days" or were "late coming in," including people that were not written up when Davis was written up by Qualico.[19] He kept a "rough figure" of who was missing work.[20] It is not clear what period of time this notebook covers.[21]

Davis admits that he does not know why the people he marked down were absent.[22] The people Davis recorded as missing might have called in sick or been otherwise excused. Indeed, one of the people he marked as leaving early was apparently leaving for treatment on a back injury and had gotten permission for his leave;[23] and another person Davis marked as missing had a son with a serious medical condition and left, with permission, to take the son for treatment.[24] Davis acknowledges that medical appointments were excused absences.[25] Davis did not obtain affidavits from any of the workers he alleges were similarly situated, and does not plan to ask for their testimony at trial.[26] Davis did not produce any records from Qualico that back up his claims, nor did he claim that further discovery was necessary for him to substantiate his claims.[27]

The only evidence Davis produces to demonstrate disparate treatment is the reference to the notebook. The Eleventh Circuit Court of Appeals has held that "[d]emonstrating a prima-facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). The question here is whether Davis's mere allegations, backed up by his notebook, are enough to raise a genuine issue for trial.

**17.** *Id.* at 13.

**18.** Plaintiff's opposition to summary judgment, filed August 21, 2001 at 3.

**19.** Defendant's motion for summary judgment, filed July 27, 2001, attached deposition of Leo Davis at 17.

**20.** *Id.*

**21.** The only date referred to in the record regarding this notebook is August 10, 1999. *Id.*

**22.** *Id.* at 18.

**23.** *Id.* at 21.

**24.** *Id.* at 35.

**25.** *Id.*

**26.** *Id.* at 100.

**27.** *Id.* at 101.

The evidenced adduced at the summary judgment phase must be based on personal knowledge, must set forth specific facts as would be admissible in evidence, and must demonstrate the competence of the party to offer the evidence. Fed.R.Civ.P. 56(e). Because the notebook contains Davis's personal observations, this evidence is based on his personal knowledge. It sets forth specific facts that would probably be admissible, and Davis seems competent to offer the evidence.

Davis's evidence, however, still fails to make out a prima-facie case. Davis must "show a similarity between" his conduct and that of white employees who were treated differently. *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989). Davis fails this requirement at every stage. First, Davis does not show that there are *any* similarly situated white employees. Neither the notebook nor Davis's other filings with this court make a showing that whites or blacks or other minorities were treated differently, because neither his notebook nor other evidence in the record even breaks down absences by race. Thus the court cannot find that there are similarly situated employees who are not African–American.

Second, Davis has made no showing that other employees (let alone white employees) engaged in nearly identical conduct. Davis's notebook[28] does nothing more than collect, in an ad hoc way, what he saw at Qualico. He makes no statement that the notebook was recorded systematically, and specifically states he did not check his observations against company records, nor did he check with individual employees to determine if they were absent, the reason for their absence, and whether the absence was excused. Given Davis's own problems with attendance, there were many times when he was not able to observe the attendance of other employees. In short, Davis has provided no credible evidence that similarly situated individuals engaged in nearly identical conduct.

Third, Davis has not shown that the disciplinary procedures against him were "more severe than those enforced against the other persons who engaged in similar conduct." *Jones*, 874 F.2d at 1540. Again, his notebook does not address whether others were punished for similar acts, or, if they were punished, what their punishments were. Because Davis fails to show that similarly situated individuals engaged in similar conduct but were disciplined less severely, he fails to make out a prima-facie case.

In conclusion, because Davis has not made out a prima-facie case of racial discrimination, this claim cannot survive summary judgment.

### B. Defendant's Non-discriminatory Reasons

■ Nevertheless, even if the court were to assume that Davis had made out a prima-facie case, he would lose. Once the plaintiff establishes a prima-facie case, the burden then shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for its employment action. *Holifield*, 115 F.3d at 1564. This intermediate burden is "exceedingly light." *Id*. The defendant has the burden of production, not persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The defendant "need only produce evidence that could allow a rational fact finder to conclude that [the adverse-employment decision was] not made for a discriminatory reason." *Standard*, 161 F.3d at 1331.

---

**28.** The court notes that Davis did not provide a copy of the notebook. The court, therefore, is construing the contents of the notebook from Davis's deposition testimony.

■ Once the defendant has offered evidence of a legitimate basis, the burden shifts back to the plaintiff to supply "evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman,* 229 F.3d at 1024 (citations omitted).

■ The plaintiff may satisfy this burden of showing pretext by persuading the court either directly that a discriminatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The Eleventh Circuit has held that, in Title VII cases involving the termination of an employee for alleged violation of a work rule, "a plaintiff, in order to prove the employer's justification to be pretextual, must show either that he did not violate the work rule or that, if he did, other employees not within the protected class who engaged in similar acts were not similarly treated." *Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir. 1982).

A unique feature of this case is that the parties dispute whether the plaintiff was in fact discharged. As a result, the above procedural scheme—in which the defendant is required to articulate a reasonable non-discriminatory reason for the adverse action and the plaintiff is then required to show the reason is pretextual—does not quite fit because the defendant denies that it took any adverse action at all. In resolving this unique feature, the court cannot abandon its common sense. Thus, when the court has before it all the evidence necessary to determine whether a factfinder could reasonably conclude that the plaintiff has been a victim of discrimination, it should not get caught up in the burden-shifting process and should instead reach the ultimate issue; that is, if on a motion for summary judgment the parties admit the court has before it all evidence that would be presented at trial and if the evidence is simply insufficient to support an ultimate finding of discrimination, then that should be the end of the case. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993) ("If ... the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant.... The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture."); *see also United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Powers v. Alabama Dep't of Educ.,* 854 F.2d 1285, 1290 (11th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989).

■ Here, Qualico has produced evidence that Davis had a substantially chronic absentee problem and that it had given Davis notice in March 1999 that it would fire him if he violated the attendance policy, but did not fire him despite continued attendance problems. Thus, there is no question but that Qualico had reasonable, legitimate grounds to discharge Davis.

Moreover, the record is devoid of evidence that this reason, if exercised, would have been racially discriminatory. First, the evidence shows that Davis was replaced by another African–American welder. Second, the observations recorded in Davis's notebook lack any substantial basis from which to conclude that, if discharged, Davis would have been treated differently from any white employee. With these two

givens, it would simply be unreasonable for a factfinder to conclude that Davis was a victim of racial discrimination.

Simply put, Qualico had no motive to discriminate against Davis; if it wanted to discharge him, it had a valid, unimpeachably non-discriminatory reason to do so. Or to put it another way, if Davis resigned, he was, of course, not a victim of discrimination; and if Davis was discharged, then the evidence is conclusive that he was discharged for a non-discriminatory reason. Either way, Davis loses on his racial discrimination claim.

## IV. RETALIATORY DISCHARGE

■ The court now turns to Davis's Title VII retaliation claim. Because Davis has not provided direct evidence of retaliation, the burdens shift as above for the discrimination claims: the plaintiff must establish a prima-facie case of retaliation; if the plaintiff is successful, retaliation is presumed, and the burden shifts to the defendant to produce a legitimate reason for the adverse-employment action; if the defendant is successful, the presumption of retaliation is rebutted, and the burden shifts again to the plaintiff to discredit the defendant's alternative explanation as pretextual. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir.1993). The elements of the prima-facie case of retaliation are (1) protected activity, (2) adverse employment action, and (3) a causal link between the protected activity and the adverse action. *Id.*

Again, as with Davis's racial discrimination claim, the above procedural scheme—in which the defendant is required to articulate a reasonable non-retaliatory reason for its adverse action and the plaintiff is then required to show the reason is pretextual—does not quite fit because the defendant denies that it took any adverse action at all. But again, because the court has before it all the evidence necessary to determine whether a factfinder could reasonably conclude that the plaintiff has been a victim of retaliation, it should not get caught up in the burden-shifting process and should instead reach the ultimate issue; that is, if on summary judgment the parties admit the court has before it all evidence that would be presented at trial and if the evidence is simply insufficient to support an ultimate finding of retaliation, then that should be the end of the case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 510–11, 113 S.Ct. at 2746.

■ Here, as stated, Qualico has produced evidence that Davis had a substantially chronic absentee problem and that it had given Davis notice in March 1999 that it would fire him if he violated the attendance policy, but did not fire him despite continued attendance problems. Thus, there is no question but that Qualico had reasonable, legitimate grounds to discharge Davis. Moreover, the record is devoid of evidence that this reason, if exercised, would have been retaliation. First, the observations recorded in Davis's notebook lack any substantial basis from which to conclude that, if discharged, Davis would have been treated differently from any other employee, regardless as to whether that employee had filed an EEOC charge, or had engaged in other Title VII protected conduct, or not. Second, there is no evidence that the attendance sanctions were part of a plan conceived in advance to terminate Davis because of his protected status. There is also no evidence in the record of other harassment by Qualico, such as assigning Davis bad equipment, bad jobs, or subjecting him to unwarranted criticism. With these givens, it would simply be unreasonable for a factfinder to conclude that Davis was a victim of retaliation.

Again, simply put, if Qualico wanted to discharge Davis, it had a valid, unimpeach-

ably non-retaliatory reason to do so. Or, again, to put it another way, if Davis resigned, he was, of course, not a victim of retaliation; and if Davis was discharged, then the evidence is conclusive that he was discharged for a non-retaliatory reason. Either way, Davis loses on his retaliation claim.

## V. CONCLUSION

Davis has filed a lawsuit against Qualico charging a racially discriminatory and retaliatory discharge. From the evidence taken as a whole, no factfinder could conclude that Davis has been a victim of either racial discrimination or retaliation. Qualico is entitled to summary judgment on both claims.

An appropriate judgment will be entered.