**Charles W. ASHE, Plaintiff,**

v.

**ARONOV HOMES, INC., Defendant.**

**No. 2:03–cv–840–F.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 15, 2004.

David Randall Arendall, Arendall & Associates, Stephanie S. Woodard, Arendall & Associates, Birmingham, AL, for Plaintiff.

Steven Michael Stastny, Susan Ware Bullock, Ford & Harrison LLP, Birmingham, AL for Defendant.

Kathy Perry Brasfield, Home Builders Licensure Board, Montgomery, AL, for Movant.

## MEMORANDUM OPINION AND ORDER

FULLER, Chief Judge.

In this case, Plaintiff Charles W. Ashe (hereinafter "Plaintiff") brings claims alleging that his former employer, Aronov Homes, Inc., (hereinafter "Defendant") unlawfully terminated his employment in violation of the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"), 29 U.S.C. § 621 *et seq*, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (hereinafter "FMLA").

This cause is before the court on the Defendant's motion for summary judgment filed on July 1, 2004 (Doc. # 18). Plaintiff filed a response in opposition to the motion on July 29, 2004 (Doc. # 20) and Defendant filed a reply thereto on July 27, 2004 (Doc. # 22). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion for summary judgment is due to be DENIED.

## I. FACTUAL BACKGROUND

The court has carefully considered all deposition transcripts, affidavits and documents submitted in support of and in opposition to the motion for summary judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

From December 1999 until November 4, 2002, Plaintiff worked for Defendant, a residential homebuilding company located in Montgomery, Alabama. Plaintiff worked in the construction business for about 22 years prior to being hired by William Mazar (hereinafter "Mazar"), President of Defendant. Mazar hired Plaintiff as a Construction Superintendent.[1] As a Construction Superintendent,

---

1. According to Defendant's personnel files, Plaintiff received a promotion in April 2001 from Project Manager to Production Manager.

Plaintiff managed the day-to-day building of residential homes and was responsible for the quality of work performed in the houses assigned to him, including the quality of the work performed by the subcontractors.

According to Plaintiff, his employment with Defendant was unremarkable until James Hamner (hereinafter "Hamner") was hired as President of Defendant in June 2002.[2] When Hamner began fulfilling his role as President, things took a turn for the worse for Plaintiff.[3]

Plaintiff complains that Hamner constantly made derogatory remarks to him about his age, including continuously referring to Plaintiff as "old man," "old son of a bitch," and "old motherfucker."[4] However, Hamner was not the only person that subjected Plaintiff to inappropriate ageist remarks. On September 3, 2002, Plaintiff's 62nd birthday, Plaintiff commented to Scott Standerfer (hereinafter "Standerfer"), a Project Manager and one of Plaintiff's supervisor's,[5] that he had just turned 62 years of age and should have taken the day off for his birthday, Standerfer responded that Plaintiff needed to retire because of his age.

In October 2, 2002, Plaintiff began experiencing pain in his side at work and informed Standerfer of his pain complaints. Standerfer suggested that Plaintiff leave work to be examined by a doctor. Plaintiff, following Standerfer's suggestion, departed work and went home to take some pain medication. Shortly thereafter, when Plaintiff's pain failed to subside, he went to the emergency room. Plaintiff was examined by a doctor and was diagnosed with diverticulitis. Because of this medical condition, Plaintiff ultimately underwent surgery and missed approximately one month of work at the direction of his doctor.[6]

On November 4, 2002, Plaintiff returned to work. Plaintiff brought his doctor's excuse to work and turned it in to the female at the front desk of the office, pursuant to Defendant's policy. After participating in a general meeting held on that date, Plaintiff was terminated by Hamner. When Plaintiff asked Hamner the reason for his termination, Hamner refused to proffer a reason. Later, Plaintiff learned that he was replaced by a younger employee.

After his discharge, Plaintiff filed a claim for unemployment benefits with the State Unemployment Board (hereinafter "Unemployment Board"). A representative of the Unemployment Board informed Plaintiff that, according to Defendant, he was discharged for failing to include pulldown staircases in some homes in compliance with the blueprints, and that because of this failure, Defendant had to pay substantial sums of money to install the staircases. Plaintiff disputes this reason and claims that he merely followed Defendant's policy of building homes pursuant to the standard sheet (or "start sheet") issued by Defendant. Plaintiff maintains that he was to directed to build homes according to the start sheets, not the blueprints, and asserts that Defendant's stated reason for his termination is false.

2. Hamner did not replace Mazar. In fact, Mazar resigned in 2001 and was replaced by Steve Thompkins (hereinafter "Thompkins"). In June 2002, Thompkins was officially replaced by Hamner as President.

3. Hamner did not know what title Plaintiff held before he became President, but he considered Plaintiff to be a Construction Superintendent.

4. Plaintiff testified that he never heard Hamner address any other employee in a similar manner.

5. Plaintiff reported to Standerfer in the field.

6. Although Plaintiff did not call Defendant to inform it of his condition or need to be absent from work, his wife called on his behalf.

On August 8, 2003, after timely filing an EEOC charge and receiving his Notice of Right to Sue, Plaintiff timely filed the instant action against the Defendant (Doc. #1).[7] According to the Complaint, Plaintiff alleges that he was terminated based on his age in violation of the ADEA, and that his termination was a result of his need for medical leave and thus constitutes a denial of reinstatement in violation of the FMLA. Plaintiff seeks injunctive relief, reinstatement, back pay, front pay, attorney fees, court costs, and an unspecified amount of compensatory damages, liquidated damages and pre-judgment interest.

## II. JURISDICTION AND VENUE

Because this case arises under the ADEA and the FMLA, the court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## IV. DISCUSSION

The Defendant moves for summary judgment in its favor on all of Plaintiff's claims. In doing so, Defendant argues that there is no genuine issue as to any material fact and that it is entitled to

---

**7.** Plaintiff alleges that he has timely exhausted his administrative remedies prior to the initi-

ation of this lawsuit, and Defendant does not dispute this allegation.

judgment in its favor as a matter of law. Plaintiff opposes Defendant's motion arguing that questions of fact exist and the case must proceed to trial. The court has considered all arguments proffered by the parties and concludes that Plaintiff's claims survive summary judgment.

## A. Plaintiff's ADEA Discriminatory Discharge Claim

■ The ADEA prohibits an employer from failing or refusing to hire any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age; the protected class under the ADEA includes individuals over the age of 40. 29 U.S.C. § 621(a)(1). An employee bringing a claim under the ADEA must prove intentional discrimination by the employer through one of two methods: presenting direct evidence of discriminatory intent, or presenting circumstantial evidence of discrimination by satisfying the four-prong analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. Of Comty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[8] Because Plaintiff has not presented any direct evidence to support his claim of discrimination, the court will only address his circumstantial evidence of age discrimination.

■ To establish an ADEA claim by using circumstantial evidence, the employee has the initial burden of showing by a preponderance of the evidence that a *prima facie* case of discrimination exists. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988). The essence of the *prima facie* case is that the employee

presents circumstantial evidence sufficient to generate a reasonable inference by the factfinder that the employer used prohibited criteria in making an adverse decision about the employee. The elements of a *prima facie* case of discrimination under the ADEA will vary depending on what theory the employee uses to prove his case. *See, e.g., Benson v. Tocco*, 113 F.3d 1203, 1208 (11th Cir.1997) (listing elements of *prima facie* cases for reduction in force claim); *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989) (listing elements of a *prima facie* case for termination and failure to hire claims). If established, the *prima facie* case raises a presumption that the employer is liable to the employee under the ADEA. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997).

■ Once the employee has established a *prima facie* case of discrimination, the employer must articulate legitimate, nondiscriminatory reasons for its employment decision. *See id.* at 1564 (citing *Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207). The employer's burden is "exceedingly light." *Holifield*, 115 F.3d at 1564. This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See, e.g., Davis v. Qualico Miscellaneous, Inc.*, 161 F.Supp.2d 1314, 1321 (M.D.Ala.2001).

■ Once the employer has come forward with a nondiscriminatory reason for its actions, the "presumption of discrimina-

---

**8.** *See e.g., Buckley v. Hospital Corp. of America, Inc.*, 758 F.2d 1525 (11th Cir.1985) (Eleventh Circuit has adopted this *prima facie* analysis for claims of age discrimination under the ADEA).

tion is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir.2000) (*en banc*) (quotation omitted). The employee may meet this burden by persuading the court either directly by showing that a discriminatory reason more than likely motivated the employer or indirectly by showing that the proffered reason for the employment decision is not worthy of belief. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *see also Young*, 840 F.2d at 828. A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ As stated above, the *prima facie* case of discrimination under the ADEA will differ somewhat given the nature of the adverse action alleged. The *prima facie* case for a discriminatory discharge case, such as this one, requires Plaintiff to prove that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. *Chapman*, 229 F.3d at 1024. In examining Plaintiff's discriminatory discharge claim, the court will assume for purposes of summary judgment that he has established a *prima facie* case.[9]

■ The burden now shifts to Defendant to produce evidence sufficient to indi-

cate that it actually discharged Plaintiff because of one or more legitimate, nondiscriminatory reasons. In rebuttal, Defendant argues that its proffered reason for Plaintiff's discharge was his insubordination, failure to follow its policies and poor work performance. Defendant presented evidence, in the form of deposition testimony from Hamner, the decisionmaker, that he terminated Plaintiff because he refused to follow company policies and had poor work performance. (Hamner Dep. at pp. 40–45). Hamner testified that he terminated Plaintiff for "refusing to obey [him]." (*Id.* at p. 41). Hamner further testified that Plaintiff did not adhere to the purchase order system implemented by Hamner when he became President, that Plaintiff had a poor attitude, that Plaintiff failed to comply with Defendant's policy which required the construction superintendent to be present for the pouring of concrete slabs, and that Plaintiff did not follow the blueprints in "a lot" of cases. (*Id.* at pp. 41–45). Finally, Defendant relies upon documentary evidence. Hamner testified that his reasons for terminating Plaintiff are supported by the memoranda he wrote describing his problems with Plaintiff which were placed in Plaintiff's personnel file. (Def.Exs. 16, 17, 20, 21, 25).

Plainly, job performance, failure to follow instructions, and insubordination are all legitimate, nondiscriminatory considerations. *See, e.g. Kelliher v. Glickman*, 134 F.Supp.2d 1264, 1274–75 (M.D.Ala.2001), *aff'd*, 313 F.3d 1270 (11th Cir.2002). Accordingly, the court concludes that the foregoing evidence satisfies Defendant's burden at the intermediate stage of the *McDonnell Douglas* framework. Thus, Plaintiff's discriminatory discharge claim comes down to the third and final stage of *McDonnell Douglas:* pretext.

---

9. The court notes that Defendant has not based its motion for summary judgment on any deficiency in Plaintiff's *prima facie* case

and instead, for purposes of the motion, assumes that Plaintiff can establish a *prima facie* case (Doc. # 18 at p. 19).

■ At the pretext stage, in order to survive summary judgment Plaintiff must provide sufficient evidence to allow a reasonable factfinder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997). Plaintiff may do this (1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996). *See also Reeves, supra* (holding that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," but cautioning that such a showing may not always be adequate to sustain a finding of unlawful discrimination).

As a threshold matter, it should be noted that in cases such as this,

> federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, not matter how mistaken the firm's managers, [federal anti-employment discrimination statutes do] not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior."

*Id.* (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)) (further citations omitted) (bracketed material added). Further, a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reason or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. Thus, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.*

■ To rebut Defendant's proffered nondiscriminatory reasons for his discharge, Plaintiff disputes the evidence indicating that his poor work performance was the actual reason he was fired. Plaintiff maintains that he was not insubordinate to Hamner, argues that he consistently followed Defendant's policies, and disputes the veracity of the negative performance memoranda placed in his personnel file. The court is mindful that Plaintiff bears the burden of offering enough probative evidence so that a reasonable jury might conclude that Defendant's reasons for termination were a pretext for age discrimination. *See Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 658 (11th Cir.1998). After a painstaking review of the entire record, the court finds that Plaintiff has made this requisite showing.

As previously discussed, Hamner placed five negative performance memoranda in Plaintiff's personnel file. These memoranda can be described as follows: (1) memorandum dated September 6, 2002 elucidates Plaintiff's failure to follow proper procedure to ensure that the faucets in a home were turned off prior to leaving the site, this failure resulted in flooding damage to the home; (2) memorandum dated September 12, 2002 establishes that Plaintiff failed to follow the policy of having the proper paperwork completed before commencing to build a home; [10] (3) memoran-

---

**10.** This memorandum states that Hamner was made aware of this inadequacy on August 6, 2002.

dum dated October 3, 2002 indicates that Plaintiff failed to comply with Defendant's policy. which required the construction superintendent to be present on the job site when the pouring of a concrete slab is completed;[11] (4) memorandum dated October 4, 2002 demonstrates that Plaintiff failed to demand quality work from his sheet rock subcontractor in a number of homes which resulted. in numerous, quality flaws in the homes;[12] and (5) memorandum dated October 24, 2002 sets forth Plaintiff's failure to install pull-down staircases in several homes as required. by the blueprints for the homes.[13]

Plaintiff directly refutes these deficiencies alleged in the negative performance memoranda and testified that, for example, he was never absent from the job site when the concrete slabs were poured, he always had the proper paperwork prior to commencing work on a home, and there was no written policy that indicated that he should strictly follow the blueprints and Hamner never informed him of such policy (Ashe Dep. at pp. 149, 158). Interestingly, the veracity of Defendant's stated reason for Plaintiff's termination is suspect, as Hamner testified that he decided to terminate Plaintiff *before* he left for medical leave on October 2, 2002 because of Plaintiff's poor work performance in the "pull-down staircase" incident.[14] (Hamner Dep.

at p. 64). However, the October 24, 2002 memorandum prepared by Hamner, which describes this building deficiency, indicates that Hamner was not even aware of this problem until October 23, 2002—21 days *after* Plaintiff began his medical leave. The timing of this negative memorandum, as well as the others, is crucial because it is dated *after* Plaintiff was absent on medical leave *and* thus was written *after* Hamner had allegedly decided to terminate Plaintiff's employment.

The court concludes that, while Plaintiff's poor job performance was documented, the evidence proffered by both parties illustrates that Hamner's stated reasons for terminating Plaintiff's employment may not be "the real reasons [ ] for. the adverse employment action." *Chapman*, 229 F.3d 1012. The inconsistencies in the evidence and the timing of these negative performance memoranda could lead a reasonable factfinder to conclude that Defendant's proffered reasons for terminating Plaintiff are ·false or, at the least, should not be . believed. *See Mayfield, supra.* While this does not lead to the automatic conclusion that Defendant's decision to terminate Plaintiff was based on his age, it does create an "inference" that Defendant might be "cover[ing] up a discriminatory purpose." *Reeves*, 530 U.S. at 133, 120 S.Ct. 2097.

---

**11.** This memorandum indicates that Plaintiff failed to comply with this policy on three occasions in August and September 2002.

**12.** This memorandum establishes that this issue was brought to Hamner's attention on October 3, 2002–the day after Plaintiff "left work due to illness." (Def.Ex.17).

**13.** This memorandum states that Hamner was made aware of this deficiency on October 23, 2002.

**14.** Hamner also placed a memorandum dated November 4, 2002 in Plaintiff's personnel file which sets forth his account of Plaintiff's ter-

mination. (Pl.Ex.16). This termination memorandum provides in relevant part:

> On November 4, 2002, [Plaintiff] returned after a lengthy illness. Plaintiff was out sick approximately 22 days with appendicitis and diverticulitis. I had planned to terminate [Plaintiff] on October 4, 2002, but [he] fell ill on October 2, 2002 and ... did not return until November 4, 2002.
>
> \* \* \* \* \* \*
>
> November 4, 2002, I brought [Plaintiff] into ·my office and was told [sic] he was being let go from Aronov Homes, Inc. [Plaintiff] asked for the reason he was being terminated and I would not give him a reason. (*Id.*).

In addition, Plaintiff has presented circumstantial evidence of Hamner's discriminatory animus toward Plaintiff due to Plaintiff's age. Plaintiff refers the court to his deposition testimony which avows that Hamner commonly referred to him as "old man," "old son of a bitch" and "old motherfucker." (Ashe Dep. at p. 136).[15] Defendant argues that Hamner's comments, if even made, are unrelated to his decision to terminate Plaintiff.[16] Even considering Defendant's arguments, the court finds that the evidence of Hamner's comments about Plaintiff's age is sufficient, coupled with the evidence discussed above, to show that Defendant's asserted reasons are pretextual.

■ It is clearly established that comments or remarks that suggest discriminatory animus can be sufficient circumstantial evidence to establish pretext. *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1362 (11th Cir.1999); *Ross v. Rhodes Furniture, Inc.,* 146 F.3d 1286, 1291 (11th Cir.1998). "[W]hether comments standing alone show pretext depends on whether the substance, context, and timing could permit a finding that the comments are causally related to the adverse employment action at issue." *Bonham v. Regions Mortgage, Inc.,* 129 F.Supp.2d 1315, 1332 (M.D.Ala.2001).

In this case, Hamner's comments "might lead a reasonable jury to disbelieve [Defendant's] proffered reason for firing" Plaintiff. *Ross,* 146 F.3d at 1292. Hamner's testimony that he did not give Plaintiff a reason for his termination because "in [his] opinion, [Plaintiff] knew why he was being fired," makes it clear that he was antagonistic towards Plaintiff. (Hamner Dep. at pp. 66–67). Although this testimony by Hamner does not evince a discriminatory animus towards Plaintiff because of his age, Plaintiff's testimony that Hamner commonly referred to him as "old man," "old son of a bitch" and "old motherfucker" is highly suggestive circumstantial evidence from which a jury could infer discriminatory animus. Standing alone, this might not be enough evidence to establish a genuine question of pretext, but Hamner was Plaintiff's direct supervisor and wrote five memoranda containing negative evaluations of Plaintiff. In this context, the evidence suggests that Hamner's evident dislike for Plaintiff due to his age may have infected the process of evaluating Plaintiff and, ultimately, resulted in his discharge. Because it is not clear to this court whether Hamner's stated reasons for terminating Plaintiff are not false nor the precise timing of when Hamner specifically made the decision to terminate Plaintiff, the court cannot conclude without more facts that Hamner's ageist comments are unrelated to Plaintiff's termination. Far from being a stray remark, these comments, if made continuously as accordingly to Plaintiff's testimony, may evince probative evidence of the state of mind of Hamner, the decisionmaker, at the time of Plaintiff's termination. Viewing the evidence in the light most favorable to Plaintiff and drawing all inferences from the evidence in his favor, the court finds that a

15. Hamner testified that he never referred to Plaintiff as "old" or made any comments to Plaintiff about his age during Plaintiff's employment. (Hamner Dep. at p. 119).

16. Defendant goes to great lengths to argue that Standerfer's comments made on Plaintiff's 62nd birthday are not circumstantial evidence of pretext. However, the court finds no need to address this argument as there is no evidence which establishes that Standerfer was a decisionmaker in the context of Plaintiff's termination, nor even played a role in Plaintiff's discharge or the events leading up to his discharge. *See e.g., Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318 (11th Cir.1998) (holding comment that was heard out of context and not necessarily related to employment of plaintiff was not evidence of discrimination).

reasonable jury could conclude that the discriminatory attitude evinced in Hamner's comments, if credited, motivated his decision to fire Plaintiff. *See e.g., Damon,* 196 F.3d at 1363; *Herawi,* 311 F.Supp.2d at 1349. While Hamner's comments may not necessitate a finding of discrimination, the ageist comments coupled with the other contested evidence before the court do provide enough evidence from which a reasonable fact finder could find discrimination. *See Israel v. Sonic–Montgomery FLM, Inc.,* 231 F.Supp.2d 1156 (M.D.Ala. 2002). Accordingly, the court finds that, based on the totality of the evidence before it, Plaintiff has presented sufficient evidence to avoid summary judgment on his age discrimination claim.[17]

## B. Plaintiff's FMLA Claims

As previously discussed, Plaintiff also alleges that he was terminated in violation of the FMLA and seeks reinstatement and damages. The court now turns to address Plaintiff's FMLA claims.

■ The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following: ... (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1).[18] The FMLA further provides that subject to certain exceptions, which the parties have not argued apply in this case,

> any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1). To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2).[19]

■ To state a FMLA claim of interference with a substantive right, an em-

17. The court notes that Plaintiff contends that *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) makes the *McDonnell Douglas* analysis obsolete (Doc. # 20 at p. 15). Importantly, however, neither this court, nor the Eleventh Circuit Court of Appeals has adopted this argument. To the contrary, this court has repeatedly addressed this issue and found that *Desert Palace* did not alter or eliminate the *McDonnell Douglas* paradigm employed in deciding motions for summary judgment in cases based on circumstantial evidence. *See Sanders v. City of Montgomery,* 319 F.Supp.2d 1296, 1314 (M.D.Ala.2004) (Fuller, J.); *Herawi v. State of Ala. Dep't of Forensic Sciences,* 311 F.Supp.2d 1335, 1345 (M.D.Ala.2004) (Thompson, J.). Accordingly, the court finds that no further discussion on this issue is warranted.

18. Defendant does not dispute that, as an employer, it is subject to the FMLA and that Plaintiff is an "eligible employee" and thus entitled to the Act's benefits.

19. The Eleventh Circuit has clarified that "[w]hile the FMLA does not clearly delineate these two claims with the labels 'interference' and 'retaliation,' those are the labels courts have used in describing an employee's claims under the Act." *Strickland v. Water Works & Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206 n. 9 (11th Cir.2001) (citation omitted).

ployee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353–54 (11th Cir.2000). To the contrary, to succeed on a FMLA retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. *See Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir.2001) (delineating between the two forms of FMLA claims). "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" *Id.* (citation omitted). These two types of FMLA claims, however, can be asserted simultaneously. *Id.* (holding that district court erred by construing claim solely as a retaliation claim where plaintiff claimed his termination while on leave constituted both retaliation and a denial of his right to reinstatement under the FMLA); *Peters v. Cmty. Action Comm., Inc. of Chambers–Tallapoosa–Coosa*, 977 F.Supp. 1428, 1433 (M.D.Ala. 1997) (explaining the protections available under the prospective and prescriptive provisions of the FMLA).

Plaintiff follows this precedent and asserts both a retaliation and interference claim under the FMLA. Accordingly, the court addresses these claims separately.

### 1. Plaintiff's FMLA Retaliation Claim

 Plaintiff alleges that Defendant terminated his employment in retaliation for taking his medical leave in October 2002. When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, the courts apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas* for evaluating Title VII discrimination claims. *Strickland*, 239 F.3d at 1207. *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798 (11th Cir.2000). In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Strickland*, 239 F.3d at 1207 (citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir.2000)).

 Defendant argues that Plaintiff cannot establish the third element of his case, namely, a causal connection between his medical leave and his termination. In order to satisfy this burden of causation, the employee must show only that "the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir.1999) (citation omitted). This burden of causation may be met by showing that the employer gained knowledge of the employee's protected conduct at a point temporally proximate to the adverse action. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). In addition, close temporal proximity between the protected conduct and the adverse-employment action can be sufficient circumstantial evidence of causation to allow the retaliation claim to proceed to the jury, unless there is undisputed proof that the employer had no knowledge of the protected activity at the time the decision was made. *Brungart*, 231 F.3d at 799.

 Considering the evidence before it, the court finds that Plaintiff can easily meet this standard: on his first day of work following his FMLA leave of absence, Plaintiff was terminated and a termination memorandum was placed in his personnel file noting his "lengthy illness"

of approximately 22 days due to "appendicitis and diverticulitis." (Pl.Ex.16.). This close temporal proximity, coupled with Hamner's undisputed knowledge of Plaintiff's illness and medical leave, creates a jury-triable issue as to this FMLA claim. *See Norman v. Southern Guar. Ins. Co.,* 191 F.Supp.2d 1321 (M.D.Ala.2002).

Adhering to the *McDonnell Douglas* analysis, Defendant asserts Plaintiff's poor work performance and insubordination as the non-retaliatory reason for which he was terminated. As discussed in relation to Plaintiff's ADEA claim, this showing meets Defendant's burden at this stage and shifts the burden back to Plaintiff to show that this proffered reason is a pretext for retaliation. *Norman, supra.*

Just as in the ADEA section above, Plaintiff counters this non-retaliatory reason by showing, through various inconsistencies, that Defendant's proffered reasons are pretextual or should not be believed. *Mayfield, supra.* Accordingly, the court finds, as it similarly concluded in relation to Plaintiff's ADEA claim, that Plaintiff's FMLA retaliation claim should proceed to a jury. Defendant's motion for summary judgment on this claim is due to be denied.

### 2. Plaintiff's FMLA Interference Claim

■ Plaintiff also alleges that Defendant interfered with his opportunity to return from an approved FMLA leave when it terminated his employment. This claim is the type of claim which the Eleventh Circuit has deemed an "interference" claim, "in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA.]" *Strickland,* 239 F.3d at 1206. As stated previously, in order to state a claim that his employer has interfered with a substantive FMLA right, a plaintiff need only demonstrate that he was entitled to the benefit denied. *See id.* at 1206–07. Plaintiff "does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Id.* at 1208.

■ An employee returning from covered leave is entitled to be restored to his former position or its equivalent. *O'Connor,* 200 F.3d at 1354.[20] An employer can deny the right to reinstatement, however, if it can demonstrate that it would have discharged the employee had he not been on FMLA leave. *Strickland,* 239 at 1208 (citing *O'Connor,* 200 F.3d at 1354). "In other words, if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." *Id.*

■ Defendant relies on this affirmative defense in contesting Plaintiff's interference claim. It asserts that its reason for discharging Plaintiff had nothing to do with his purported FMLA leave; it terminated his employment on November 4, 2002 for insubordination, failure to follow its policies and poor work performance. If the record established without dispute that Defendant discharged Plaintiff for this reason, the court would grant summary judgment. However, the evidence in the record indicates that the memorandum

---

**20.** "This restoration right is subject to a number of limitations under the FMLA[.]" *Peters,* 977 F.Supp. at 1432. The FMLA does not require the accrual of seniority or employment benefits during periods of leave, but specifies that an employee taking leave cannot be denied benefits accrued prior to the date on which the leave commenced. 29 U.S.C. § 2614(a)(2) & (3). The FMLA permits employers to require employees on leave "to report periodically to the employer on the status and intention of the employee to return to work." 29 U.S.C. § 2614(a)(5). Moreover, employers are entitled to require that the need for leave be supported by the certification of a health care provider. 29 U.S.C. § 2614(b)(3). None of these limitations, however, are raised by the parties in this action.

prepared by Hamner regarding Plaintiff's termination specifically noted that Plaintiff "returned after a lengthy illness" and "was out sick approximately 22 days with appendicitis and diverticulitis." (Pl.Ex.16). The memorandum states that Hamner "had planned to terminate [Plaintiff] on October 4, 2002, but [he] fell ill on October 2, 2002 and ... did not return until November 4, 2002." (*Id.*). The memorandum made no mention of Plaintiff's purported insubordination, failure to follow Defendant's policies or poor work performance and, in fact, indicates that Hamner would "not give [Plaintiff] a reason" for his termination. (*Id.*). Accordingly, a reasonable jury could find that Hamner based his decision on his stated reasons which were wholly unrelated to Plaintiff's FMLA leave, or it could choose to accept Plaintiff's version and infer that Hamner had a negative view of his "lengthy illness" and that such view played a role in Plaintiff's termination. Nonetheless, the court finds that, as it may not make such credibility determinations in reaching its decision on the motion for summary judgment, Plaintiff has established an interference claim sufficient for submission to a factfinder that may make such credibility determinations: a jury. In short, Defendant is not entitled to summary judgment on this FMLA claim because genuine issues of material fact preclude summary judgment on this basis.

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendant's motion for summary judgment is hereby DENIED.